■ In the Matter of FRANKLIN MINT CORPORATION, Formerly FRANKLIN MINT, INC., Petitioner, v JAMES H. TULLY, JR., et al., Constituting the Tax Commission of the State of New York, Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a sales and use tax assessment pursuant to articles 28 and 29 of the Tax Law. Petitioner is a Pennsylvania corporation which manufactures and sells through mail solicitation and media advertising coins, medals, and other collectibles. Since 1969, petitioner or its subsidiary, the Franklin Mint Corporation, a Delaware corporation which served until 1974 merely to protect the "Franklin Mint" name, has been authorized to do business in the State and has paid a minimal franchise tax each year. Prior to December 19, 1972, petitioner's contacts with New York State consisted of financial dealings in New York City, the retention of "numismatic representatives" who exhibited petitioner's products at various coin shows but did not solicit orders or make sales, and the company's usual advertising and mail solicitation to sell its products. In mid-1970, petitioner, anticipating an increase in New York business and cognizant that it might be or become liable for the collection of State use taxes, voluntarily registered with the New York State Sales Tax Bureau as a "vendor" authorized to collect use taxes from its customers. Since that time petitioner has collected and

remitted State use taxes on all sales to New York residents; it has also collected New York City use taxes on sales to city residents. Not until December, 1974, however, did it collect local use taxes on sales to its New York customers living outside New York City. On December 19, 1972, petitioner purchased all the stock of Sloves Mechanical Binding Co. (Sloves), a New York corporation, which had produced and continues to produce packaging materials for petitioner's goods. The Sloves factory is located in New York City. From the time of the stock purchase until Sloves was merged into petitioner on December 16, 1974, Sloves was operated as a wholly owned subsidiary of petitioner without any change in its preacquisition management or operations. After the merger, petitioner began to collect local use taxes on sales to New York customers residing outside New York City. The State Department of Taxation and Finance, on December 17, 1976, notified petitioner that it was liable for approximately $225,000 in uncollected local use taxes relating to premerger sales which had occurred since September 1, 1973. Penalties and interest totaling some $122,000 were also sought. When respondent commission denied petitioner's petition to revise the department's determination, this proceeding followed. Petitioner challenges the commission's decision on both statutory and constitutional grounds. Initially, it is contended that petitioner's voluntary registration to collect State use taxes did not establish it as a "vendor" bound to collect local use taxes. Section 1101 (subd [b], par [8], cl [i]) of the Tax Law contains several definitions of "vendor", one of which includes corporations "making sales to persons within the state of tangible personal property or services, the use of which is taxed by this article, who may be authorized by the tax commission to collect such tax". Because petitioner squarely fits within this category, there is no need to consider the correctness of respondent's conclusion that petitioner was a "vendor" under the various other definitions inhabiting that section. The commission could rationally determine that a corporation which voluntarily obtains authority to collect use taxes becomes a "vendor". Since 1976, a regulation has made this explicit (20 NYCRR 526.10 [e]), but even absent this regulation, the plain meaning of the statute comprehends corporations like petitioner and affords them notice that if they choose to register, they, as any other vendor, become responsible for the collection of local use taxes (Tax Law, § 1131, subd [1]; § 1254, subd [a]). Petitioner also maintains that the Department of Taxation, by its refusal to comment on petitioner's hybrid manner of collecting only State and New York City local taxes from 1970 until the time of the audit, is now precluded from complaining about this practice. Since nothing more than a comparatively minor period of delay in enforcement is involved, the department's action was not improper (*Matter of Aldens, Inc. v Tully*, 49 NY2d 525, 536, app dsmd 449 US 802). With respect to petitioner's constitutional claims, we note at the outset that petitioner's unawareness that it was charged with collecting local use taxes from New York customers not residing in New York City does not offend due process. As observed in *Matter of Aldens* (*supra*, p 531), a vendor is clearly obliged to collect these taxes by subdivision (a) of section 1254 of the Tax Law. Petitioner was required to remain faithful to the statute, and the tax department was under no affirmative duty to advise petitioner of its statutory obligation (*id.*, at p 536). The remaining constitutional challenge, founded upon the due process clause and the commerce clause, is also unpersuasive. Petitioner's principal assertion is that its relationship with the State of New York was insufficient to warrant imposition upon it of a use tax collection liability during the period preceding the merger with Sloves. Concededly, the burden of collecting a use tax can only be constitutionally imposed if there is "some definite link, some minimum connection, between a state and the

person, property or transaction it seeks to tax" (*Miller Bros. Co. v Maryland,* 347 US 340, 344-345). Fundamentally then, as in *Matter of Aldens (supra)*, resolution of this constitutional argument turns on whether petitioner's contacts with New York provided a sufficient nexus between petitioner and the State to justify requiring petitioner to see to the collection and transmission of local use taxes. We believe they did. Petitioner's ties to New York are not thin and inconsequential. They comprise the use of representatives here to exhibit petitioner's products, financial dealings in New York City, substantial newspaper advertising, and the solicitation of orders by direct mail. Most important, however, is the New York presence of petitioner's two wholly owned subsidiaries — The Franklin Mint Corporation, to whom New York since 1969 extended the privilege of doing business, and Sloves, which produced packaging for petitioner's products. That Sloves apparently functioned in exactly the same fashion as it had prior to its acquisition by petitioner does not materially alter the finding of a nexus. Through Sloves, petitioner unquestionably was able to enjoy the advantages of services provided by the State and local governments much like the taxpayer in *National Geographic v California Equalization Bd.* (430 US 551). The corporate organization adopted by petitioner and Sloves cannot obscure the fact that the Sloves plant, New York property, was indeed controlled and owned by petitioner. Finally, petitioner contends that it should not be held liable for the penalties and interest assigned because its failure to pay the use taxes was a decision made in good faith and upon the advice of experienced tax counsel. This does not, however, lessen the commission's discretion in this area one whit (*Matter of Petrolane Northeast Gas Serv. v State Tax Comm.,* 79 AD2d 1043, 1044, mot for lv to app den 53 NY2d 601). Determination confirmed, and petition dismissed, with costs. Main, Mikoll, Yesawich, Jr., and Levine, JJ., concur.

Kane, J. P., dissents and votes to annul in the following memorandum.
Kane, J. P., (dissenting). I am unable to agree with the majority that petitioner's relationship with the State of New York was sufficient to warrant imposition upon it of a use tax collection liability during the period preceding its merger with Sloves. During the audit period herein, petitioner had some contact with New York State. Petitioner contracted with representatives who made appearances at coin shows in New York State for petitioner. There is no evidence in the record about how often these representatives appeared at coin shows in New York State for petitioner. These representatives, however, did not solicit or take orders for petitioner's products (cf. *Scripto v Carson,* 362 US 207) and it is not disputed that all of petitioner's sales were made through the mail. Petitioner advertised in New York State newspapers, but such is an insufficient contact (see *Miller Bros. Co. v Maryland,* 347 US 340). Petitioner registered with the Sales Tax Bureau to collect sales and use taxes in 1970, but such registration would not require the collection and remittance of said taxes if the taxes were unconstitutional as applied to petitioner (cf. *National Geographic v California Equalization Bd.,* 430 US 551; *Miller Bros. Co. v Maryland, supra,* pp 342-345). Franklin Mint Corporation, a Delaware corporation and wholly owned subsidiary of petitioner, was authorized to do business in New York. However, it is undisputed that this Franklin Mint Corporation existed only to protect the "Franklin Mint" name and in actuality conducted no business within New York State. This being the case, the issue distills to a consideration of whether Sloves, a wholly owned subsidiary of petitioner, which was doing business in New York, provides the requisite nexus within New York State to warrant imposition upon petitioner of a use tax collection liability. I think not. In a somewhat different, but nonetheless analogous, due process context, it is well settled that personal jurisdiction cannot be exercised

over a foreign corporation through the presence of a wholly owned subsidiary in New York State unless "[t]he control over the subsidiary's activities [is] so complete that the subsidiary is, in fact, merely a department of the parent" (*Delagi v Volkswagenwerk AG of Wolfsburg, Germany*, 29 NY2d 426, 432; see, also, 1 Weinstein-Korn-Miller, NY Civ Prac, par 301.16, pp 3-37 — 3-38, nn 62-63). Thus, in at least some due process contexts, a distinction is recognized between the contacts a nonresident parent company has with New York State through a wholly owned subsidiary controlled by said parent and the contacts a nonresident parent company has with New York State through a wholly owned subsidiary operated distinct from said parent. Such a distinction should be recognized in the present due process context.[*] The United States Supreme Court's pronouncement that something more than the "slightest presence" must be maintained in the taxing State by an out-of-State party before said party becomes liable under the taxing State's use tax provisions (*National Geographic v California Equalization Bd.*, 430 US 551, 556, *supra*) permits an out-of-State party some indirect contact with or presence in the taxing State without becoming liable for collection of the tax. The presence of a wholly owned subsidiary which operates as a distinct business enterprise in the taxing State is such an indirect contact or presence. Thus, in this case, where there is no evidence in the record to dispute petitioner's verified allegations that from its purchase of Sloves until their merger in December, 1974, Sloves operated without any change in operation, business management or employees and without engaging in the sale of petitioner's products, petitioner's contact with New York State prior to said merger was through a wholly owned subsidiary which operated as a distinct business enterprise. This indirect contact during the audit period was constitutionally insufficient to hold petitioner liable for the use taxes in issue. The determination should be annulled.

---

[*] In fact, the rule enunciated in *National Geographic v California Equalization Bd.* (*supra*) has been applied in the context of due process jurisdictional constraints (see, e.g., *Gold Kist v Baskin-Robbins Ice Cream Co.*, 623 F2d 375, 378, n 2; *Wilkerson v Fortuna Corp.*, 554 F2d 745, 749-750, cert den 434 US 939).