SFA FOLIO COLLECTIONS, INC. *v.* TIMOTHY F. BANNON, COMMISSIONER OF REVENUE SERVICES
(14023)

PETERS, C. J., SHEA, COVELLO, HULL and BORDEN, Js.

Argued November 8, 1990—decision released January 22, 1991

*Richard K. Greenberg,* assistant attorney general, with whom were *John G. Haines,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* attorney general, and *Jane D. Comerford,* assistant attorney general, for the appellant (defendant).

*Maryann B. Gall,* with whom were *Laura A. Kulwicki* and *William H. Narwold,* for the appellee (plaintiff).

BORDEN, J. The issue in this tax appeal is whether the trial court correctly determined that the imposition of Connecticut sales and use taxes on the plaintiff, SFA Folio Collections, Inc. (Folio), a mail order company, was a violation of the due process and commerce clauses of the United States constitution because Folio lacks a sufficient nexus to the state. The defendant, the commissioner of revenue services (commissioner), assessed Folio with sales and use taxes pursuant to General Statutes § 12-406 et seq., asserting that a sufficient nexus between the state and Folio existed, primarily because Folio was part of an "enterprise" of other affiliated corporations, one of which, Saks Fifth Avenue Stamford, Inc. (Saks-Stamford), clearly had a taxable nexus to the state. We affirm the judgment of the trial court.

In February, 1987, the commissioner informed Folio that it was required to begin collection and remittance of sales and use taxes because it satisfied the definition of "[e]ngaged in business in the state" pursuant to General Statutes § 12-407 (15).[1] Folio had neither applied for a permit to collect such taxes in Connecticut, nor had it ever collected such taxes on its catalog sales to Connecticut residents. In justifying the imposition of the tax liability, the commissioner stated that "[t]he unitary nexus established from [Folio's] shared corporate name, logo, etc., with Saks Fifth Avenue-Stamford, Inc., is the basis of our position." The commissioner thereafter requested that Folio register with the department of revenue services and begin to collect the appropriate taxes on its catalog sales to Connecticut customers. Folio contested, as an unconstitutional application of Connecticut law, the imposition of a duty upon it to register pursuant to General Statutes § 12-411 (8).

The commissioner notified Folio that its registration application had been processed and its tax registration number assigned, although Folio had not applied for such a number. The commissioner then informed Folio

---

[1] General Statutes § 12-407 (15) provides: " 'Engaged in business in the state' means selling in this state, or any activity in this state in connection with selling in this state, tangible personal property for use, storage or consumption within the state or engaging in the transfer for a consideration of the occupancy of any room or rooms in a hotel or lodging house for a period of thirty consecutive calendar days or less, or rendering in this state any service described in any of the subdivisions of subsection (2) of this section. The term shall include but shall not be limited to the following acts or methods of transacting business: (a) Maintaining, occupying or using, permanently or temporarily, directly or indirectly, through a subsidiary or agent, by whatever name called, of any office, place of distribution, sales or sample room or place, warehouse or storage point or other place of business or (b) having any representative, agent, salesman, canvasser or solicitor operating in this state for the purpose of selling, delivering or taking orders."

that it would be issued an assessment of its tax liability. Thereafter, the commissioner imposed on Folio an assessment of $234,450.28, which comprised $163,052.71 in sales and use taxes, $55,072.25 in interest, and $16,305.32 in penalty costs. The commissioner later issued Folio an additional assessment of $20 for a sales and use tax license and permit.

Folio filed a petition for reassessment with the commissioner pursuant to General Statutes § 12-421, asserting that it was not "engaged in business" in Connecticut pursuant to § 12-407 (15), and, therefore, could not constitutionally be required to collect or to pay Connecticut sales and use taxes on its mail order sales to Connecticut residents. The commissioner denied Folio's appeal, and confirmed the assessment. Folio appealed the decision to the Superior Court pursuant to General Statutes § 12-422. The trial court reversed the decision of the commissioner, concluding that Folio did not have a sufficient nexus to Connecticut to sustain the imposition of a sales and use tax. The commissioner appealed to the Appellate Court, and we transferred the case to ourselves pursuant to Practice Book § 4023.

The facts stipulated by the parties may be summarized as follows. Folio, a wholly owned subsidiary of Saks & Company, conducts a nationwide mail order business. Both Folio and Saks & Company are New York corporations. Folio's principal place of business is in Yonkers, New York, and Saks & Company's corporate headquarters are in New York City. The two corporations share a number of common directors and officers, although each corporation maintains separate management for day-to-day operations. Additionally, Folio, with the consent of Saks & Company, maintains as part of its corporate name the "SFA" registered trademark of "Saks Fifth Avenue." This trademark, which often appears in Folio's catalogs, characterizes

the high quality of merchandise and service tradition-
ally associated with Saks & Company. To the extent
that a customer associates "SFA" with Saks Fifth Ave-
nue, Folio is benefited.

Saks & Company, in addition to owning Folio, owns
Saks-Stamford, a separate corporation that operates
a retail store in Stamford, Connecticut. Folio and all
Saks Fifth Avenue retail stores, including Saks-
Stamford, share sales and financial data and profit and
loss statements. The management groups for Folio and
Saks-Stamford, however, are separate and operate
autonomously. Although the corporations are indepen-
dent, Folio does, through its printers,[2] send extra copies
of its mail order catalog by common carrier to the Saks-
Stamford general manager in order to inform store
employees of fashion trends, to be used as reference
guides, and to serve as merchandise educational tools.
Folio customers may also use Saks-Stamford's tailor-
ing services for a standard fee, but these services are
also available to the public at large regardless of where
an item was purchased. Folio sells some of the same
items that are available at Saks-Stamford, but many
of these items are also available at other retail stores
throughout the country.

In conducting its business, Folio distributes mail
order catalogs[3] and flyers to Connecticut residents and
receives orders either by mail or by telephone. Cus-
tomers pay for their orders by credit card or check,[4]

---

[2] Folio's printers are located outside of Connecticut.

[3] Folio does not design, prepare, print, publish or mail its catalogs in or
from Connecticut.

[4] Folio does not fill any order that is paid by check until the check has
been cleared by the bank, thereby eliminating the need to use the Connect-
icut court system in order to collect bad debts. Additionally, Folio does not
bear the risk of loss for any purchases by credit card, as such risk falls upon
the credit card company, further eliminating any claim that Folio derives
benefits from the Connecticut court system.

and Folio fills them in Yonkers, New York. Customers may use their Saks & Company charge card when making purchases from Folio, as well as when buying items at Saks-Stamford. Folio often includes advertising for Folio in the form of "bill inserts" in the charge card bill received by the customer from Saks & Company. Folio does, however, pay for the customer's return envelope accompanying the billing statement. Folio delivers purchases to Connecticut buyers either through the mails or by common carrier, with the customers paying for the shipping, handling, and transportation of their orders. Folio refers its customers to its Yonkers office for customer assistance, merchandise return or exchange, and other services.

Folio does not operate retail stores, and does not maintain under its corporate name any store, office, distribution house, sales house, sample room, warehouse, or other place of business in Connecticut. Folio does not have any solicitors, canvassers, sales persons, authorized agents, or representatives in Connecticut. Folio is not licensed to do business in Connecticut, and has no inventory or merchandise in the state. Folio does not maintain a phone number in Connecticut; all customer contact is through the use of a toll free "800" number. Folio has no bank accounts in Connecticut, does not retain security interests in any goods sold to Connecticut residents, and does not investigate credit or collect accounts in Connecticut.

The commissioner first claims that the trial court incorrectly determined that there was such an absence of the requisite nexus between Folio and Connecticut that the imposition of the sales and use taxes violated the due process and commerce clauses of the federal constitution. While the commissioner asserts that Folio, independently, has a sufficient nexus to Connecticut, his primary claim in this regard is that, under an enter-

prise theory, the presence in Connecticut of an affiliated corporation, namely, Saks-Stamford, supplies Folio with a sufficient nexus to sustain the imposition of sales and use taxes. Secondly, the commissioner claims that, in light of the developments in "the judicial analysis of due process and the mail-order industry," the due process standard applicable to personal jurisdiction claims should be employed so that an "economic presence" in Connecticut satisfies the nexus requirement for state taxation. We disagree.

## I

This appeal is governed by the United States Supreme Court decision in *National Bellas Hess, Inc.* v. *Department of Revenue,* 386 U.S. 753, 87 S. Ct. 1389, 18 L. Ed. 2d 505 (1967), and our recent decision in *Cally Curtis Co.* v. *Groppo,* 214 Conn. 292, 572 A.2d 302, cert. denied, U.S. , 111 S. Ct. 77, 112 L. Ed. 2d 50 (1990). In *National Bellas Hess, Inc.,* the United States Supreme Court determined that constitutional constraints limit the authority of a state to impose sales and use tax liability upon an out-of-state seller. *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, 756; *Cally Curtis Co.* v. *Groppo,* supra, 297. "Such a collection burden when placed upon an out-of-state seller triggers due process concerns as well as imposes a restraint upon interstate commerce." *Cally Curtis Co.* v. *Groppo,* supra; see also *National Bellas Hess, Inc.* v. *Department of Revenue,* supra; *L.L. Bean, Inc.* v. *Department of Revenue,* 516 A.2d 820, 824 (Pa. Commw. 1986). In *Cally Curtis Co.,* we reaffirmed the applicability of *National Bellas Hess, Inc.,* to a claim of taxability like that asserted in this case, and held that where the only nexus between Connecticut and the corporation was the in-state presence for three days of video tapes leased by the out-of-state corporation to its in-state customers, an insufficient nexus existed to warrant the imposition of the Connecticut use tax. *Cally Curtis Co.* v. *Groppo,* supra, 301.

In determining whether a state tax conforms with constitutional due process requirements, the United States Supreme Court has held that the " 'simple but controlling question is whether the state has given anything for which it can ask return.' " *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, quoting *Wisconsin* v. *J. C. Penney Co.,* 311 U.S. 435, 444, 61 S. Ct. 246, 85 L. Ed. 267 (1940). Because Congress has the exclusive authority to regulate interstate commerce, " '[s]tate taxation falling on interstate commerce . . . can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys.' " *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, 756, quoting *Freeman* v. *Hewit,* 329 U.S. 249, 253, 67 S. Ct. 274, 91 L. Ed. 265 (1946); see also *Cally Curtis Co.* v. *Groppo,* supra, 298. Therefore, the relevant legal inquiry in reviewing the constitutionality of imposing the duty of collection of such a tax upon an out-of-state seller is whether there exists " 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' " *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, quoting *Miller Bros. Co.* v. *Maryland,* 347 U.S. 340, 344–45, 74 S. Ct. 535, 98 L. Ed. 744 (1954); see also *Cally Curtis Co.* v. *Groppo,* supra. "The existence of such a link or nexus will turn upon the individual facts of each case." *Cally Curtis Co.* v. *Groppo,* supra.

At the outset, the commissioner claims that Folio's contacts with Connecticut are greater than those of the taxpayers in *National Bellas Hess, Inc.,* and *Cally Curtis Co.* These alleged contacts consist of the large number of catalogs Folio mails to Connecticut residents,[5]

---

[5] Folio mailed to Connecticut residents 649,000 catalogs in 1986 and 733,000 catalogs in 1987.

the operation of a toll-free "800" number for customer use, the placement of advertisements in magazines that ultimately reach Connecticut residents, and the extra copies of its catalogs that Folio sends to Saks-Stamford's general manager for business use. The trial court, in examining this claim of nexus, however, found "the facts of *National Bellas Hess, Inc.,* and *Cally Curtis Co.* indistinguishable from the facts of this case."

In reviewing the trial court's determination, in this context, "the effect of admitted facts is a question of law." *Nelson* v. *Montgomery Ward & Co.,* 312 U.S. 373, 376, 61 S. Ct. 593, 85 L. Ed. 897 (1941). Therefore, the relevant inquiry is whether any of the asserted contacts establish some definite link or some minimum connection between Folio and Connecticut. *National Bellas Hess, Inc.* v. *Department of Revenue,* supra.

The commissioner's claim of nexus based upon the catalogs ignores the fact that the catalogs, once delivered to Connecticut residents, are the property of the residents, not Folio.[6] Such activity, therefore, does not establish a taxable link between Folio and the state. The use of a toll-free "800" number for Connecticut residents to place orders likewise does not demonstrate a sufficient link to Connecticut. *L.L. Bean, Inc.* v. *Department of Revenue,* supra, 825. Additionally, the advertisements for Folio that appear in magazines are not created or placed in magazines in Connecticut. The fact that the magazines eventually are sold in Connecticut does not establish a nexus between Folio and the state. Finally, the catalogs sent by Folio's printers to Saks-Stamford do not establish a link to Connecticut because these catalogs are used for employee training

---

[6] The commissioner's argument that Folio derives benefit from Connecticut by virtue of the state disposing of the catalogs as paper trash is likewise without merit. Because the catalogs are the property of the Connecticut residents, it is axiomatic that it is the resident who is deriving the benefit from the state and who must contribute to the cost of the disposal.

and reference purposes, not for the purpose of having the Saks-Stamford employees solicit Folio sales from Connecticut residents. Compare *Scripto, Inc.* v. *Carson,* 362 U.S. 207, 80 S. Ct. 619, 4 L. Ed. 2d 660 (1960).

On the facts of this case, we can discern no greater nexus between Connecticut and Folio than existed between Connecticut and the out-of-state corporation in *Cally Curtis Co.* We conclude, therefore, that Folio, viewed independently, does not have a nexus to Connecticut sufficient to support the imposition of sales and use taxes.

We turn, therefore, to the commissioner's primary claim, namely, that because Folio is part of a larger enterprise of affiliated corporations, Folio should be deemed to share the nexus that Saks-Stamford has with Connecticut. We are not persuaded.

The parties do not contest that Saks-Stamford is a Connecticut corporation responsible for paying Connecticut sales and use taxes because it has local retail stores in the state. *Nelson* v. *Sears, Roebuck & Co.,* 312 U.S. 359, 61 S. Ct. 586, 85 L. Ed. 888 (1941). The parties disagree, however, about the implications to be drawn from the connections between these affiliated but independent corporations when the issue is the sufficiency of Folio's nexus to Connecticut for sales and use tax purposes.

Significantly, the commissioner does not assert that we should find a nexus pursuant to a "piercing the corporate veil"[7] or "alter ego"[8] theory. The commissioner

---

[7] The disregard of a technically correct corporation "in terms of a metaphor, is often called 'piercing the corporate veil.' " H. Henn & J. Alexander, Laws of Corporations (3d Ed. 1983) § 146, p. 344. "The concept [of corporateness] will be sustained only so long as it is invoked and employed for legitimate purposes. Perversion of the concept to improper uses and dishonest ends (e.g., to perpetuate fraud, to evade the law, to escape obligations), on the other hand, will not be countenanced." Id., § 146, p. 346.

[8] "A conventional statement of [the 'alter ego' doctrine] declares that 'piercing the veil' is proper when (1) such unity of ownership and interest

does not dispute the trial court's factual finding that Folio and Saks-Stamford are "distinct corporate entities." Rather, the commissioner claims that because these separate entities are linked by their common corporate parent, Saks & Company, their separate corporate existence should be disregarded and they should be treated as one enterprise for the purposes of establishing a nexus for taxation.[9] Should such a determination be made, Folio would be subject to sales and use tax liability, despite the lack of an independent nexus with Connecticut, because it would be "plainly accorded the protection and services of the taxing State"; *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, 757; as a result of the presence of the Saks-Stamford retail store in Connecticut. *Nelson* v. *Montgomery Ward & Co.,* supra; *Nelson* v. *Sears, Roebuck & Co.,* supra.

It is undisputed that in Connecticut a court will disregard the corporate structure and pierce the corporate veil " 'only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice.' " *Angelo Tomasso, Inc.* v. *Armor Construction & Paving, Inc.,*

exists that the two affiliated corporations have ceased to be separate and the subsidiary has been relegated to the status of the 'alter ego' of the parent; and (2) where recognition of them as separate entities would sanction fraud or lead to an inequitable result." P. Blumberg, The Law of Corporate Groups, Statutory Law-General (1987) § 2.02.2, p. 37.

[9] "Traditionally, the law has viewed each corporation as a separate legal entity, with separate rights and obligations. For legal purposes, a bright line of distinction was drawn between the corporation and its shareholders." P. Blumberg, The Law of Corporate Groups, Procedural Law (1983) § 1.01.1, p. 1. The "[e]ntity theory" of corporate law is the premise "that a corporation is a fictitious, artificial, legal person or juristic entity . . . . [On the other hand,] [t]he 'enterprise theory' stresses the underlying commercial enterprise, without emphasis on the entity-aggregate distinction of the components." H. Henn & J. Alexander, Laws of Corporations (3d Ed. 1983) § 78, pp. 145–46.

187 Conn. 544, 557, 447 A.2d 406 (1982). Nevertheless, the commissioner seeks to have this court abandon our traditional notions of corporate law and ignore Folio's separate corporate existence under an enterprise theory. In support of this legal proposition, the commissioner relies on three authorities: (1) the "unitary business" principle articulated in *Container Corporation of America* v. *Franchise Tax Board,* 463 U.S. 159, 103 S. Ct. 2933, 77 L. Ed. 2d 545, reh. denied, 464 U.S. 909, 104 S. Ct. 265, 78 L. Ed. 2d 248 (1983); (2) Dean Phillip I. Blumberg's four volume treatise, The Law of Corporate Groups; and (3) the Connecticut Superior Court case of *Hartford Steam Services Co.* v. *Sullivan,* 26 Conn. Sup. 277, 220 A.2d 772 (1966).

First, the commissioner cites *Container Corporation of America* v. *Franchise Tax Board,* supra, as support for the proposition that "[w]here a group of corporations are formed and operated as a unitary enterprise, there is no constitutional barrier to the group being viewed as a unitary enterprise and taxed as such." The commissioner fails to recognize, however, that the "unitary business principle" is a statutorily created system of calculating corporate income tax "by first defining the scope of the 'unitary business' of which the taxed enterprise's activities in the taxing jurisdiction form one part, and then apportioning the total income of that unitary business between the taxing jurisdiction and the rest of the world on the basis of a formula taking into account objective measures of the corporation's activities within and without the jurisdiction." Id., 165. Clearly, there is no statute within the Connecticut sales and use tax chapter; General Statutes § 12-406 et seq.; that allows the commissioner to treat separate corporations as part of one enterprise for the purpose of imposing sales and use tax liability, and the commissioner does not make such a claim. Absent such statu-

tory authority, the line of cases pursuant to the "unitary business principle" are inapplicable.

Second, the commissioner cites as support for the enterprise theory Dean Phillip I. Blumberg's four volume treatise on The Law of Corporate Groups, supra. Without determining whether the commissioner's general reference to the multivolume treatise constitutes adequate briefing of the issue, we find no legal support therein for the commissioner's conclusion that "[s]imply stated, the fact that the Saks-Stamford store and Folio are wholly-owned affiliated corporations rather than divisions of the same corporation is without constitutional significance and not controlling."

To the contrary, it is a fundamental principle of corporate law that "the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares in the subsidiary and the two enterprises have identical directors and officers. Such control, after all, is no more than a normal consequence of controlling share ownership." H. Henn & J. Alexander, Laws of Corporations (3d Ed. 1983) § 148, p. 355. Furthermore, the separate corporate entities or personalities of affiliated corporations will be recognized, absent illegitimate purposes, unless: "(a) the business transactions, property, employees, bank and other accounts and records are intermingled; (b) the formalities of separate corporate procedures for each corporation are not observed . . . (c) the corporation is inadequately financed as a separate unit from the point of view of meeting its normal obligations . . . (d) the respective enterprises are not held out to the public as separate enterprises; (e) the policies of the corporation are not directed to its own interests primarily but rather to those of the other cor-

poration." H. Henn & J. Alexander, supra, § 149, pp. 355–56; see also *Hammond* v. *United States,* 764 F.2d 88, 100 (2d Cir. 1985).[10]

This is not a situation where the corporate assets have been intermingled, where the formalities of separate corporate procedure have been ignored, or where the corporation is inadequately financed. Additionally, as determined by the trial court,[11] the corporations are

[10] In *Hammond* v. *United States,* 764 F.2d 88, 100 (2d Cir. 1988), the Court of Appeals for the Second Circuit, in reviewing a decision of the United States District Court for the District of Connecticut, noted that "at times, both state law and the [Internal Revenue Code] abandon the notion of the separate identity of corporations for narrow purposes and in limited situations[;] see, e.g. *United States* v. *Reading Co.,* 253 U.S. 26, 62–63, 40 S. Ct. 425, 434, 64 L. Ed. 760 (1920) (where subsidiary is mere agent or instrumentality of parent, separate corporate existence of subsidiary may be ignored); *Weisser* v. *Mursam Shoe Corp.,* 127 F.2d 344, 348 (2d Cir. 1942) (same); N.Y. Bus. Corp. Law § 630 (McKinney 1963) (largest shareholders liable for wage debt of insolvent corporations); IRC § 951(a), 26 U.S.C. § 951(a) (1982) (income of controlled foreign corporation deemed to be income of corporation's shareholder); IRC § 481, 26 U.S.C. 481 (1982) (authorizing IRS to reallocate income among commonly-held businesses so as to prevent tax evasion). . . ." Similarly, the Court of Appeals for the Tenth Circuit has recently held that "[w]e believe that the separate treatment for tax purposes of parent and wholly-owned subsidiary should not be extended when we can see no business purpose beyond an opportunity to manipulate for tax purposes." *Marathon Oil Co.* v. *Commissioner of Internal Revenue,* 838 F.2d 1114, 1120 (10th Cir. 1987).

While these decisions are not binding precedent on this court, *Hammond* and *Marathon Oil Co.* lend further support to our conclusion that it is not the place of this court to ignore the separate entity of a corporation absent a fraudulent, evasive, or manipulative purpose in forming or maintaining the corporation. The commissioner has made no claim that Folio was incorporated or maintained for the purpose of evading sales and use taxes, and no such claim would be credible based upon the evidence presented at trial. Compare *Hartford Steam Services Co.* v. *Sullivan,* 26 Conn. Sup. 277, 220 A.2d 772 (1966) (subsidiary mere paper corporation).

[11] The trial court concluded that "[a]lthough [Folio and Saks-Stamford] have some common directors and officers, are affiliates of the same parent company, use the same trademarks and logos, sell similar merchandise and share financial and market information, they are distinct corporate entities. Saks-Stamford is not Folio's retail store, agent instrumentality, or alter ego. The finding of the Commissioner's unit chief that Folio is

not held out to the public as one entity. Because we conclude that the finding of fact that Folio is a separate corporate entity was not clearly erroneous; *French v. Clinton,* 215 Conn. 197, 205, 575 A.2d 686 (1990); we would not be justified in disregarding Folio's separate identity for tax purposes. *Angelo Tomasso, Inc. v. Armor Construction & Paving, Inc.,* supra, 557.

In further support of his contention that this court should apply an economic enterprise theory, the commissioner argues that if we recognize a constitutional distinction between affiliated corporations, such as in this case, and divisions of the same company; *Nelson v. Sears, Roebuck & Co.,* supra; the result would be that "any retailer with an out-of-state mail order component could avoid collecting sales and use tax simply by separately incorporating the retail and mail order businesses." While we agree with the commissioner's assertion, we conclude that it does not support his claim for rejecting Folio's corporate entity and applying the enterprise theory.

The commissioner's argument demonstrates a misunderstanding of a fundamental principle underlying our system of taxation, namely, that " 'taxpayers may arrange their affairs to minimize their tax liabilities. Unlike tax evasion, tax avoidance through careful planning of both transactions and corporate structure is a legitimate right of every taxpayer.' " Jurinski, "Agency Relationships in Determining Nexus: Groping for a Solution," 7 Journal of Taxation 321, 321 (1989). Furthermore, the commissioner ignores the fact that a business that is incorporated separately from a parent or affiliated corporation incurs additional burdens by the very fact of its separate corporate existence. Indeed,

---

engaged in business in Connecticut because a 'unitary nexus' was established by its 'shared corporate name, logo, etc., with Saks Fifth Avenue Stamford Inc.' has no basis in the evidence or the law."

as Folio argues, because of its separate corporate existence it must register with the secretary of the state, qualify to do business, hold a corporate charter, issue stock, maintain corporate minute books, file corporate income tax returns, and remit payroll and unemployment taxes. Folio is also subject to suit for contractual and other obligations that stem from the conduct of its business. Even as a part of a deliberate tax-avoidance strategy, the fact that Folio is incorporated as an entity separate from Saks-Stamford and Saks & Company does not, standing alone, permit a taxing authority to disregard Folio's corporate identity.

The commissioner also relies upon the decision of the Superior Court in *Hartford Steam Services Co.* v. *Sullivan*, supra, to support the application of the enterprise theory to Folio for state tax purposes. In describing the economic enterprise theory, the court, *Parskey, J.*, stated that "[t]his is not the negative concept variously described as 'piercing the corporate veil' or 'disregarding the corporate fiction,' a concept based on equitable principles and designed to frustrate fraud, misrepresentation or illegality. It is, rather, a positive principle, the effect of which is to remove judicial blinders so as to enable the court to see things as they really are." Id., 281. Thus, "where the economic enterprise is one, the corporate forms being largely paper arrangements that do not reflect the business realities, the court should deal with the realities." Id. That case is neither controlling on us nor persuasive because here, unlike the facts of that case, the business reality is that Folio is not a paper arrangement but a separate and independently functioning corporation.

## II

The commissioner's second claim is that, in light of developments in due process analysis and in the mail-order industry, the nexus requirement of the due pro-

cess clause is satisfied where an out-of-state corporation, such as Folio, has an "economic presence" in the state. This argument, at its roots, seeks to adopt the minimum contacts standard of personal jurisdiction analysis for state taxation on an out-of-state mail order company by dispelling the need for the company to have some physical connection[12] with the state beyond the use of the United States mail or a common carrier. We decline to adopt such an analysis.

The commissioner bases his argument on developments in due process case law for personal jurisdiction

[12] A review of United States Supreme Court case law in the area of state imposition of sales and use taxes demonstrates that some degree of physical presence, whether by the presence of a retail store, offices, local agents, solicitors, or local advertising, is constitutionally required to support such a burden: " 'Case law has established that a sufficient nexus is found to exist where local agents of the seller are present in the taxing state. *Felt & Tarant Manufacturing Co.* v. *Gallagher,* 306 U.S. 62, 59 S. Ct. 376, 83 L. Ed. 488 (1939); *General Trading Co.* v. *State Tax Commission of the State of Iowa,* 322 U.S. 335, 64 S. Ct. 1028, 88 L. Ed. 1309 (1944). A similar result has been reached where the seller has local retail stores which are present in the taxing state. *Nelson* v. *Sears, Roebuck & Co.,* 312 U.S. 359, 61 S. Ct. 586, 85 L. Ed. 888 (1941) . . . . And in *National Geographic Society* [v. *California Equalization Board,* 430 U.S. 551, 97 S. Ct. 1386, 51 L. Ed. 2d 631 (1977)], the presence in the taxing state of two offices which solicited advertisements and received the benefit of municipal protection (fire, police, etc.) was held a sufficient nexus.' " *Cally Curtis Co.* v. *Groppo,* 214 Conn. 292, 298–99, 572 A.2d 302 (1990), quoting *L.L. Bean, Inc.* v. *Department of Revenue,* 516 A.2d 820, 824–25 (Pa. Commw. 1986).

"In *Miller Brothers Co.* v. *Maryland,* [347 U.S. 340, 74 S. Ct. 535, 98 L. Ed. 744 (1954)], however, the United States Supreme Court held that Maryland 'could not constitutionally impose upon a Delaware seller an obligation to collect use taxes where the Delaware firm had no retail outlets or sales solicitors in Maryland, despite the presence of advertising in Maryland which resulted in substantial sales and the delivery of goods into Maryland by the seller using its own trucks and drivers.' *L.L. Bean, Inc.* v. *Department of Revenue,* supra, 825. Furthermore, in *National Bellas Hess, Inc.* v. *Department of Revenue,* [386 U.S. 753, 87 S. Ct. 1389, 18 L. Ed. 2d 505 (1967)], the United States Supreme Court found an insufficient nexus where the only contacts between the seller and the taxing state were through the United States mail or common carrier." *Cally Curtis Co.* v. *Groppo,* supra, 299.

purposes, claiming that because commercial activity in a state is often sufficient for a state to exert personal jurisdiction over an out-of-state company; *Asahi Metal Industry Co.* v. *Superior Court of California,* 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); such contacts should be sufficient to support state taxation on an out-of-state mail order company whose only contacts with the state are through the United States mail and common carriers.[13] The commissioner ignores, however, the general principle that "[i]t is the nature of the state's action that determines the kind and degree of activity in the state necessary for satisfying the requirements of due process." *Travelers Health Assn.* v. *Virginia,* 339 U.S. 643, 653, 70 S. Ct. 927, 94 L. Ed. 1154 (1949) (Douglas, J., concurring); see also *Kulick* v. *Department of Revenue,* 624 P.2d 93, 97 (Or.

---

[13] The commissioner asserts that more recent case law has focused on the "totality [of circumstances] of the business activities in a particular state" in determining whether a nexus exists to support state taxation. The cases cited, however, do not support the commissioner's argument that minimum contacts or economic presence alone should be the applicable standard.

In *National Geographic Society* v. *California Board of Equalization,* 430 U.S. 551, 97 S. Ct. 1386, 51 L. Ed. 2d 631 (1977), the United States Supreme Court upheld the imposition of sales and use taxes where the corporation had present in the taxing state two offices that solicited advertisements and received the benefit of municipal protection. Likewise, in *Reader's Digest Assn.* v. *Mahin,* 44 Ill. 2d 354, 255 N.E.2d 458 (1970), the Illinois Supreme Court upheld the imposition of sales and use taxes because the corporation used local advertising and resident solicitors. In *Cooey-Bentz Co.* v. *Lindley,* 66 Ohio St. 2d 54, 419 N.E.2d 1087 (1981), the court cited advertising directed at Ohio residents, as well as deliveries, installations, and repairs made in Ohio by the defendant West Virginia retailer to justify applying a use tax. Lastly, in *Franklin Mint Co.* v. *Tully,* 94 App. Div. 2d 877, 463 N.Y.S.2d 566 (1983), aff'd, 61 N.Y.2d 980, 463 N.E.2d 621, 475 N.Y.S.2d 280 (1984), the corporation engaged in local advertising, as well as delivery, installation, and service of goods located in New York.

A review of these cases demonstrates that a degree of physical connection to the taxing state, beyond the use of the mails or common carrier, existed in each case. In this case, Folio did not engage in any local advertising or local delivery, servicing or installation as part of its own corporate activities.

1981). The degree of due process required for exercising personal jurisdiction is not necessarily the same as that required to justify a state tax on an out-of-state seller. *Kulick* v. *Department of Revenue,* supra.[14]

Indeed, in *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, 758, the United States Supreme Court explicitly recognized that a "sharp distinction" exists "between mail order sellers with retail outlets, solicitors, or property within a State, and those who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business." The commissioner's claim ignores the interests of the commerce clause, specifically discussed in *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, which provide that " 'state taxation falling on interstate commerce . . . can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys.' " Id., 756, quoting *Freeman* v. *Hewit,* 329 U.S. 249, 253, 67 S. Ct. 274, 91 L. Ed. 265 (1946). The commissioner's bald assertion that "Folio has purposely availed itself of the privilege of conducting activities in Connecticut, thus invoking the benefits and protection of its laws," fails to clarify *how* Folio is benefitted

---

[14] In *Kulick* v. *Department of Revenue,* 624 P.2d 93, 97 (Or. 1981), the Oregon Supreme Court analyzed the applicability of the minimum contacts standard to a case involving a challenge to the imposition of a tax on nonresident shareholders of a Subchapter S corporation. That court noted that "[w]hen [the assertion of personal] jurisdiction is challenged, the due process issue concerns not the nonresident's substantive obligation, which theoretically should be the same in whatever court tries the case, but rather the legitimacy of that state's putting the nonresident to the inconvenience, the possible procedural drawbacks, and the judgment of what is asserted to be an inappropriate forum. A tax law, by contrast, is addressed to a general class of persons on whom the state means to place the substantive obligation to contribute to its revenues. It is not at all clear that the 'contacts' that due process demands for the first purpose are identical with the 'nexus' required for the second."

by local government when its contacts to Connecticut are solely through the United States mail and common carriers. Compare *D.H. Holmes Co.* v. *McNamara,* 486 U.S. 24, 108 S. Ct. 1619, 100 L. Ed. 2d 21 (1988) (presence of retail stores in state); *National Geographic Society* v. *California Board of Equalization,* 430 U.S. 359, 97 S. Ct. 1386, 51 L. Ed. 2d 631 (1977) (presence of two offices that solicited advertisements in state); *Scripto, Inc.* v. *Carson,* 362 U.S. 207, 80 S. Ct. 619, 4 L. Ed. 2d 660 (1959) (presence of solicitors in state).

The commissioner's argument that we should adopt an "economic presence" analysis in essence parallels the reasoning of the dissent in *National Bellas Hess, Inc.* v. *Department of Revenue,* supra. Justice Fortas argued that the imposition of the sales and use tax on the mail order company was proper, stating that "large-scale, systematic continuous solicitation and exploitation of the Illinois consumer market is a sufficient 'nexus' to require Bellas Hess to collect from Illinois customers . . . ." Id., 761. Furthermore, Justice Fortas would have found sufficient nexus to support the application of a tax where *National Bellas Hess, Inc.,* "regularly and continuously engaged in 'exploitation of the consumer market' . . . by soliciting residents of Illinois who live and work there and have homes and banking connections there . . . ." Id., 762. This view, however, has not been adopted by the United States Supreme Court, despite its recent review of the issue in *D.H. Holmes Co.* v. *McNamara,* supra. In that case, the United States Supreme Court reaffirmed its adherence to *National Bellas Hess, Inc.,* and to the rule of constitutional law that a state may not collect sales and use taxes from a mail order company where its only contacts are through the mail or common carriers. We therefore reject the commissioner's claim that would have us dispense with the constitutional safeguards of

the commerce clause and the due process clause. *Cally Curtis Co.* v. *Groppo,* supra.

The judgment is affirmed.

In this opinion the other justices concurred.