Walter E. **HESS**

v.

**L.G. BALFOUR COMPANY, INC., and Town & Country Corp.**

**Civ. No. 5:91–303 (WWE).**

United States District Court, D. Connecticut.

May 17, 1993.

William C. Zifchak, Harvey P. Sanders, Kaye, Scholer, Fierman, Hays & Handler, New York City, Randolph Lovallo, Curtis, Brinckerhoff & Barrett, Stamford, CT, for plaintiff.

Ira B. Grudberg, Thomas W. Ude, Jr., Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, Kevin W. Clancy, Goodwin, Procter & Hoar, Marjorie S. Cooke, Procter & Hoar, Boston, MA, for defendants.

### RULING ON MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, Walter Hess ("Hess"), brought this action against defendant, L.G. Balfour Co., Inc. ("Balfour"), and its parent corporation, defendant, Town and Country Corporation ("T & C"), alleging breach of contract, failure to pay wages, unlawful deductions from wages, conversion, and constructive discharge. Hess seeks to impose liability on Balfour directly, and on T & C by piercing

the corporate veil and through use of agency principles.

T & C has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Hess has cross-moved for partial summary judgment. For the reasons set forth below, T & C's motion for summary judgment will be granted, and Hess' motion will be denied.

## FACTS

This court described the underlying facts of this case at great length in its May 5, 1993 ruling on Balfour's and Hess' separate motions for summary judgment. The following facts are pertinent to this ruling.

Balfour is a Delaware corporation located in Attleboro, Massachusetts. Hess resides in Connecticut. Hess and Balfour entered into a Commercial Representative Agreement ("Agreement") in 1969. T & C is a Massachusetts corporation located in Chelsea, Massachusetts. T & C acquired Balfour in November, 1988, through the purchase of all of Balfour's outstanding stock. After experiencing problems with Balfour, Hess brought the present seven count action against both Balfour and its parent corporation, T & C. Hess alleges that T & C is liable under each count because, as Balfour's parent corporation, it is allegedly responsible for Balfour's conduct.

## DISCUSSION

■ A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992), quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### *Piercing the Corporate Veil*

■ Courts treat a parent corporation and its subsidiaries as separate and distinct legal entities. *SFA Folio Collections, Inc. v. Bannon,* 217 Conn. 220, 585 A.2d 666 (1991) *cert. denied,* — U.S. —, 111 S.Ct. 2839, 115 L.Ed.2d 1008 (1991). In Connecticut, a court will disregard the corporate veil "only under exceptional circumstances." Connecticut recognizes two separate tests for piercing a corporate veil: (1) the "instrumentality" test; and (2) the "identity" test. *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.,* 187 Conn. 544, 553, 447 A.2d 406 (1982).

■ To prevail under the instrumentality test, the plaintiff must prove three elements: (1) control by the parent of the finances, policies and business practices relating to the transactions at issue to such an extent that the subsidiary "had at the time no separate mind, will or existence of its own"; (2) that the parent used its control over the subsidiary for the purpose of committing a fraudulent, wrongful, or otherwise unlawful act; and (3) that the control and breach of duty alleged caused plaintiff's injury. In order to prevail using the identity test, the plaintiff must demonstrate "that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun...." *Tomasso,* 187 Conn. at 553–54, 447 A.2d 406.

■ Application of either test produces an unfavorable result for Hess. T & C has demonstrated that there is no proof that it so controlled Balfour that Balfour lacked a mind, will or existence of its own. Balfour owns its own land, pays its own taxes, has its own employees and management, has its own

manufacturing facility, uses its own designers and artists, issues its own invoices, and keeps its own bank accounts. Even assuming T & C exercised a high degree of control over Balfour, there is no basis for concluding that T & C used that control for the purpose of conducting any wrongful or fraudulent activity. Finally, nothing supports the proposition that actions by T & C caused injury to Hess. While true that there is no unconditional rule that a parent cannot breach its subsidiaries contract with a third party, it is also true that a plaintiff must establish that the parent acted not merely for economic reasons, but rather with malice or bad intent toward the plaintiff. *Record Club of Am., Inc. v. United Artists Records, Inc.*, 611 F.Supp. 211, 217 (S.D.N.Y.1985). Hess cannot escape this principle. The record is devoid of evidence that T & C acted with any bad intent.

■ The identity test is similarly unavailing to Hess. Courts look to several factors when determining if a parent and subsidiary have the same identity. *See SFA Folio Collections Inc. v. Bannon*, 217 Conn. 220, 585 A.2d 666 (1991). First, are the business transactions, bank accounts and records intermingled? As stated above, that is not present here. Second, are the two corporations not observing corporate formalities? Balfour and T & C incorporated in different states and in different decades. Each has its own directors and officers, and each maintains its own records. Third, is the subsidiary inadequately financed? Like many companies, Balfour appears to be experiencing financial problems. However, they do not reach the level of an obvious inadequacy requiring disregard for the corporate form. *See Anderson v. Abbott*, 321 U.S. 349, 362, 64 S.Ct. 531, 538, 88 L.Ed. 793 (1944) (obvious inadequacy, measured by magnitude of corporate undertaking, has been important factor). Finally, is the subsidiary acting solely for the interests of the parent? There is nothing in the record to indicate that this is the case with Balfour and T & C. In sum, there are no material facts in dispute which would prevent this court from granting summary judgment in favor of T & C on the issue of piercing the corporate veil.

### Direct Liability and Agency Theories

Hess argues that T & C is directly liable for Hess' injuries. The only legal support offered by Hess to advance this argument are two cases holding that a parent may be liable for inducing a breach by its subsidiary. *See Phoenix Canada Oil Co. v. Texaco Inc.*, 842 F.2d 1466, 1477 (3rd Cir.1988), *cert. denied*, 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988) (when one corporation acts as agent of disclosed principal corporation, latter corporation may be liable on contract made by agent); *and Conniff v. Dodd, Mead & Co.*, 593 F.Supp. 266, 269 (S.D.N.Y. 1984) (parent corporation may interfere with contract between subsidiary and plaintiff only if parent does not use illegal means or is not motivated by malice). These two cases may be easily distinguished. In *Phoenix*, the court stated that there are two methods by which a parent corporation may be held liable: (1) by piercing the corporate veil; and (2) by applying general agency principles. The language cited by Hess applies only to agency principles. In *Conniff*, the court addressed the doctrine of tortious interference with contract. Hess did not bring a claim for tortious interference of contract.

■ Finally, Hess argues that T & C may be found liable based on agency principles. As stated before, when one corporation acts as the agent of a disclosed principal corporation, the principal may be found liable for contracts made by the agent, even though the principal was not a party named in the agreement. *Phoenix*, 842 F.2d at 1477. " 'Domination may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent.' " *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 403, 80 S.Ct. 441, 443, 4 L.Ed.2d 400 (1960) (quoting *Berkey v. Third Avenue R. Co.*, 244 N.Y. 84, 95, 155 N.E. 58, 61 (1926)). While this is a different test than that for piercing the corporate veil, it involves the same elements—specifically, whether the parent so dominated or interfered with the subsidiary that a court should find the parent liable. As discussed above, this court does not find that T & C completely dominated or interfered with Balfour's operations. There are no issues of material

fact in dispute on these theories which would prevent this court from granting summary judgment in favor of T & C.

## CONCLUSION

For the reasons set forth above, T & C's motion for summary judgment [79–1] is GRANTED. In this court's May 5, 1993 ruling on Balfour's and Hess' motions for summary judgment, summary judgment was granted in part and denied in part on the Hess motion. As it relates to T & C, Hess' motion for summary judgment [125–1] is DENIED. The Clerk is directed to dismiss this action as to Town & Country Corporation.