[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO STRIKE (#174)
The plaintiff, Allen Buitekant, filed a five-count, third amended complaint on September 28, 1995 (#168), against defendants Zotos Corporation (Zotos), Zotos International (ZI), and Shiseido Company Limited (Shiseido), the sole owner of Zotos and ZI, for actions arising from an alleged contract relating to the plaintiff's employment with Zotos, and Zotos' predecessor ZI. The plaintiff alleges that in June 1992, the president and CEO of Zotos "offered in writing to pay the plaintiff one year's compensation in the event that the plaintiff became terminated from his employment for any reason other than maleficence." (Third Amended Complaint, ¶ 11.) The plaintiff accepted the offer, but was terminated on October 6, 1992 "for reasons other than the plaintiff's maleficence" and Zotos has not paid the plaintiff one year's compensation. (Complaint, ¶¶ 13-15.) The first count alleges breach of contract against Zotos, the second count alleges tortious interference with contract against Shiseido, the third alleges breach of contract against Shiseido, the fourth alleges a breach of covenant of good faith and fair dealing against Zotos and Shiseido, and the fifth alleges a failure to pay fringe benefits against both companies pursuant to General Statutes § 31-72.
The defendants filed a motion to strike (#174) counts three, four and five of the plaintiff's third amended complaint on November 30, 1995. The plaintiff filed an objection on February 23, 1996, and the defendants filed a reply to the objection on April 19, 1996.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Novametrix Medical Systems v. BOC Group, Inc.,224 Conn. 210, 214-15, 618 A.2d 25 (1992). "This includes the facts necessarily implied and fairly provable under the allegations. . . . It does not include, however, the legal conclusions or opinions stated in the complaint. . . ." S.M.S.Textile v. Brown, Jacobson, Tillinghast, Lahan and King, P.C.,32 Conn. App. 786, 796, 631 A.2d 340 (1993).
The defendants argue that count three should be stricken and count four should be stricken as against Shiseido because the CT Page 5123-B counts purport to state a cause of action in breach of contract and breach of the covenant of good faith and fair dealing in a contract, but the plaintiff has not alleged that Shiseido is a party to the contract. The plaintiff argues that under the instrumentality theory of intercorporate liability, the parent corporation cannot shield itself from liability in wrongfully manipulating a subsidiary corporation.
The plaintiff alleges that "Shiseido Company Limited is an indirect party to the severance contract by virtue of its status as the parent corporation of the defendant Zotos Corporation, and therefore is liable for its own and/or Zotos Corporation's breach of said contract." (Complaint, ¶ 20.) The complaint further provides that an executive of Shiseido instructed Zotos executives not to honor the severance agreement "entered into between Zotos Corporation and the plaintiff." (Complaint ¶ 18.)
"In pleading an action for breach of contact [sic], the plaintiff must plead: 1) the existence of a contract or agreement; 2) the defendant's breach of the contract or agreement; and 3) damages resulting from the breach." Chem-Tek,Inc. v. General Motors Corp., 816 F. Sup. 123, 131 (D. conn. 1993). "Connecticut courts require privity of contract in order to maintain a cause of action for breach of contract." Chang v.Novella, Superior Court, Judicial District of Danbury, Docket No. 311569 (July 28, 1995, Stodolink, J.); Harry Carp Sons v.Hanson, Superior Court, Judicial District of Stamford, Docket No. 125511 (March 23, 1993, Lewis, J., 8 CSCR 414); Reynolds v. Owen,34 Conn. Sup. 107, 111, 380 A.2d 543, (Sup.Ct. 1977). The plaintiff has not alleged privity of contract between Shiseido and the plaintiff.
The plaintiff argues that it is entitled to pierce the corporate veil to the parent corporation because Shiseido dominated and controlled Zotos with respect to the transaction at issue. The defendants respond that in order to invoke the instrumentality rule, the parent corporation must have exercised control at the time the agreement was entered into, with respect to the formation of the agreement and the breach. The plaintiff, however, has only alleged that Shiseido controlled the breach of the agreement.
"It is a fundamental principle of corporate law that the parent corporation and its subsidiary are treated as separate and CT Page 5123-C distinct legal persons even though the parent owns all of the shares in the subsidiary and the two enterprises have identical directors and officers." SFA Folio collections, Inc. v. Bannon,217 Conn. 220, 232, 585 A.2d 666 (1991). "[T]he corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice." Angelo Tomasso, Inc. v. Armor Construction Paving, Inc., 187 Conn. 544, 557, 447 A.2d 406 (1982). The parties are at issue on the first element of the instrumentality rule. The defendants cite Clee v. Remillard Bld., Inc.,649 F. Sup. 1127, 1131 (D. Conn. 1986), in which the court pierced the corporate veil and held the corporation's president liable in a breach of contract action based on the instrumentality theory. The court analyzed the president's conduct with respect to entering and performing the contract, not just with respect to the breach.
The plaintiff directs the court Lowendahl v. Baltimore O.R.Co., 287 N.Y.S. 62 (A.D. 1 Dept. 1936). The trial court permitted the plaintiffs to hold the stockholders liable for fraudulent conveyance of certain business assets to the defendant corporation. The appellate court reversed because it did not find sufficient evidence to pierce, but looked to the defendant's control at the time of the conveyance.
The case cited by the plaintiff was based on a specific instance of fraud, while the case cited by the defendants was a contract action, as are the third and fourth counts in the case before the Court. In a breach of contract action, when the plaintiff attempts to pierce the corporate veil the plaintiff is in essence alleging that the parent corporation was the real party to the contract, "the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor." Tomasso, Inc. v. Armor Construction,
supra, 187 Conn. 552. The court in Clee looked at the defendants actions at all stages of the contract, before, during and after to determine whether the veil should be pierced. Clee, supra,649 F. Sup. 1131-32. The complaint alleges only that Shiseido was involved in the breach, but not in the formation, and it does not allege that Shiseido dominated Zotos in any other way. The plaintiff is restating a cause of action in tortious interference, not breach of contract, and has not alleged facts warranting the court to pierce through to the parent corporation. CT Page 5123-D
The breach of the covenant of good faith and fair dealing arises from the contract between Zotos and the plaintiff. Habetzv. Condo, 224 Conn. 231, 238, 618 A.2d 501 (1992) )"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.") The covenant arises from the contract and does not extend to nonparties. Accordingly, the motion to strike is granted as to count three, and as to Shiseido in count four.
The defendants next move to strike count five because it is barred by the statute of limitations; the cause of action does not relate back to the first complaint; the alleged severance contract is not an accrued fringe benefit as defined by C.G.S. § 31-76k; and Shiseido was not an employer within the meaning of the statute.
Count five alleges that the defendants failed to pay a fringe benefit pursuant to General Statutes § 31-72 and § 31-76k. General Statute § 52-596 provides, "No action for the payment of renumeration for employment payable periodically shall be brought but within two years after the right of action accrues." The plaintiff was terminated on October 6, 1992. The third amended complaint raising the statutory claim by the plaintiff became effective October 23, 1995, beyond a two year limitations period.
"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment states back to the date of the original pleading."Guliacci v. Meyer, 218 Conn. 531, 547, 590 A.2d 914 (1991). "It is proper to amplify or expand what has already been alleged in support of a cause of action. . . . but where an entirely new and different factual situation is presented, a new and different cause of action is stated." Id., 547.
The fifth count is based on the severance contract at issue in the first four counts. The allegation relating to an employer policy provides that this severance contract was issued to the plaintiff pursuant to an employer policy. This allegation is building on, and expanding upon the underlying actual transaction, the issuance and breach of the severance agreement. Accordingly, the count relates back to the initial filing, and therefore is within a two year statute of limitations period. CT Page 5123-E
As to the arguments regarding whether or not severance pay is periodic payments of wages, subject to the provisions of C.G.S. § 52-596, the Court finds the questions is moot due to this Court's decision that count five relates back to the initial filing.
The defendants next argue that severance pay does not fit within the definition of fringe benefits in General Statutes § 31-76k. General Statutes § 31-76k provides for the payment of "accrued fringe benefits upon termination, including, but not limited to, paid vacations, holidays, sick days, and earned leave." The court in Woolley v. Bank of Boston, Superior Court, Judicial District of Waterbur, Docket No. 115069 (July 13, 1994, McDonald, J., 12 Conn.L.Rptr. 127) provides that severance pay is an accrued fringe benefit. The defendants attempt to distinguish the holding in Woolley by characterizing the agreement as one not intended to compensate the plaintiff for past services. The intent behind the agreement is not an appropriate issue to be decided on a motion to strike.
Lastly, the defendants argue that Shiseido should not be liable under the statutes because the complaint alleges that Shiseido was an indirect party to the agreement, but does not allege that Shiseido was an employer. The plaintiff rests on his arguments regarding piercing the corporate veil. Because the corporate veil argument fails, so must the argument on the fifth count. The plaintiff has not alleged that Shiseido was an employer, and therefore Shiseido cannot be liable under General Statutes § 31-72 and § 31-76k. Accordingly, the fifth count should be stricken as to Shiseido.
In summary, it is ordered that the defendants' motion to strike is granted as to count three. It is also granted as to Shiseido in count four, and as to Shiseido in count five.
ARNOLD, J.