ROBERT UTZLER *v.* JOHN A. BRACA, JR., ET AL.
(AC 29923)
(AC 30224)

Gruendel, Lavine and Peters, Js.

Argued March 11—officially released June 23, 2009

*Michael J. Leventhal,* for the appellant-appellee in AC 29923 and the appellee in AC 30224 (plaintiff).

*John A. Braca, Jr.,* pro se, the appellee-appellant in AC 29923 (named defendant).

*Glenn T. Terk,* for the appellee in AC 29923 (defendant Patricia Braca) and the appellants in AC 30224 (defendant Patricia Braca et al.).

*Opinion*

PETERS, J. This case concerns numerous claims arising out of a contract between an investor and a builder for the construction and sale of a luxury home in Westport. The investor has filed a multicount complaint for the return of his investment and for monetary damages because, although the home belatedly has been completed, bank foreclosures have left the property financially "under water." The trial court found the builder to be personally liable even though he had conducted his business through a number of corporate identities. The court, however, ruled against the investor in his claim of unjust enrichment against the builder's wife. In the principal appeal, the investor challenges the judgment in favor of the wife, and the builder cross appeals from the judgment in favor of the investor. In the second appeal, the builder and his wife contest the continuing

validity of two prejudgment attachments of their properties. We affirm the judgment in the principal appeal, and correlatively affirm the judgment denying the discharge of the prejudgment attachment of the builder's property and set aside the second judgment denying the discharge of the prejudgment attachment of the property of his wife.

In an eight count second amended complaint filed August 28, 2007, the plaintiff, Robert Utzler, alleged that the defendant John A. Braca, Jr., was liable to him for breach of contract, breach of fiduciary duty, fraud, intentional misrepresentation, breach of the implied covenant of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and statutory theft. The plaintiff also alleged that the defendant Patricia Braca, the wife of John A. Braca, Jr., was liable to him for statutory theft and unjust enrichment.[1] After a trial to the court, the court concluded that the plaintiff had proven all of his claims against the defendant except breach of the covenant of good faith and fair dealing and statutory theft but that the plaintiff had not proven either of his claims against Patricia Braca. In AC 29923, the plaintiff appeals from the court's judgment denying his claim for unjust enrichment against Patricia Braca, and the defendant cross appeals from the court's adverse judgment against him. In AC 30224, the parties contest the continuing validity of the prejudgment attachments of the properties of the defendant and of Patricia Braca.

The underlying facts are established by the court's careful and detailed memorandum of decision. On

---

[1] In addition to John A. Braca, Jr., and Patricia Braca, the plaintiff named Homes of Fairfield County, LLC, Homes of Westport, LLC, and The Braca Family Trust, LLC, as defendants. Because we affirm the court's judgment that all of these business entities were the alter egos of John A. Braca, Jr., we refer to him in the singular as the defendant and to Patricia Braca by name.

August 25, 2003, the plaintiff entered into a contract with Homes of Fairfield County, LLC (Fairfield, LLC), a company controlled by the defendant, to invest in the building of a luxury home at 2 Moss Ledge Road in Westport (Moss Ledge). In return for the plaintiff's investment of $500,000, the defendant agreed that, when the house was sold, he would repay the plaintiff's investment and also pay him 25 percent of the net profit. The contract specified that the moneys contributed by the plaintiff were to be used solely for this project, and that the defendant was responsible for obtaining construction financing and for building the home.[2] Ridgefield Bank subsequently provided mortgage financing in the amount of $2,075,000.

To induce the plaintiff to agree to the investment contract, the defendant knowingly misrepresented his financial circumstances to the plaintiff. He told the plaintiff that he had made $520,000 on a prior project at Woody Lane in Westport (Woody Lane) when, in fact, he had sold that property for a loss or for a relatively small profit. The plaintiff relied on this misrepresentation to his detriment.

Although the defendant nominally conducted his construction business through a number of business entities, each of these companies was in fact his alter ego. He wholly dominated the finances, policies and business practices of each of them. He operated these businesses without observing any corporate formalities. He used them as conduits to receive funds that were then diverted, at his sole discretion, to further his own business and personal purposes. The court therefore held the defendant personally liable for the conduct of both Fairfield, LLC, with whom the plaintiff nominally

---

[2] Paragraph fifteen of the investment contract provides: "The funds provided by [the plaintiff] or the Construction Lender shall be used only for the Project. Any use of such funds for any other purpose whatsoever shall constitute a default hereunder on the part of [the defendant]."

entered into the investment contract, and Homes of Westport, LLC (Westport, LLC), which the defendant nominally selected to construct Moss Ledge. Finally, the court also held that the defendant's personal liability was not affected by his creation of The Braca Family Trust, LLC (Trust, LLC), which he had designated to receive the proceeds of this project. Each of these entities was the defendant's alter ego, both under the "identity rule"; *SFA Folio Collections, Inc.* v. *Bannon*, 217 Conn. 220, 229–30, 585 A.2d 666, cert. denied, 501 U.S. 1223, 111 S. Ct. 2839, 115 L. Ed. 2d 1008 (1991); and under the "instrumentality rule." *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.*, 213 Conn. 486, 490, 569 A.2d 32 (1990).

Throughout their joint venture, the defendant treated the plaintiff's investment as if it were his personal fund available for his own business and personal needs. Despite an express provision in the investment contract that the plaintiff's investment was to be used solely for the Moss Ledge project, the defendant immediately used approximately $60,000 of the funds contributed by the plaintiff to close out his costs on the unrelated earlier project at Woody Lane. He regularly deposited funds that he had received from the plaintiff, and from the two construction mortgages for Moss Ledge, into a commingled bank account on which he drew to satisfy debts unrelated to the project and to pay personal expenses. Before completing Moss Ledge, the defendant diverted building resources to another project, a new residence for himself and his wife at Grays Farm Road in Westport (Grays Farm), and placed a third mortgage in the amount of $900,000 on Moss Ledge solely to benefit his and his wife's personal interest in Grays Farm. Further facts will be discussed as they relate to the specific claims raised in the parties' appeals.

We first address the claims arising out of the direct appeal and cross appeal in AC 29923, in which we affirm the judgment of the court. We then address the claims arising out of the two prejudgment remedy orders in AC 30224, in which we set aside the judgment denying the discharge of the prejudgment attachment of the property of Patricia Braca, and affirm the second judgment denying the discharge of the prejudgment attachment of the property of the defendant and of his alter ego business entities.

I

AC 29923

THE PLAINTIFF'S APPEAL

The eighth count of the plaintiff's complaint alleged that Patricia Braca had been unjustly enriched in the amount of $257,508 by payments from a Westport, LLC, bank account in 2003 that derived entirely from the plaintiff's investment. The plaintiff maintains that the court improperly found that he had failed to prove this claim. We do not agree.

Under well established Connecticut law, "[p]laintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . . . Furthermore, the determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings for the trial court that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the

sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 283, 649 A.2d 518 (1994).

The court based its ruling against the plaintiff on the following findings of fact: "It is undisputed that at the time [the plaintiff] invested his funds into Fairfield, LLC, Westport, LLC, had a relatively small balance in its checking account. [The defendant] transferred [the plaintiff's] investment funds into Westport, LLC's, account along with the construction financing funds from Ridgefield Bank. It is further undisputed that the defendant commingled funds between the two accounts. As admitted by [the plaintiff] in his trial brief, '[the defendant's] chosen method of handling project expenses was quite unorthodox . . . needlessly commingling the funds and making it impossible to unravel all the transactions.' In this regard, [the plaintiff] failed to prove that any funds received by Patricia Braca from Fairfield, LLC, or Westport, LLC, were part of [the plaintiff's] investment funds. Despite a significant amount of trial time spent by the parties on the money trail, including numerous charts, the court could make no reasonable findings or conclusions relating to the flow of the funds or [the plaintiff's] claims concerning them. [The plaintiff] chose not to present expert testimony, in the form of a forensic accountant or otherwise, to further support his claims concerning [the defendant's] use of the project funds.

"While the absence of such evidence was not necessarily fatal to his claims, the state of the evidence concerning [the defendant's] use of the funds, including payments made to Patricia [Braca], remained mired in the mud. In view of the foregoing, [the plaintiff] has failed to prove the elements of his unjust enrichment claim against Patricia [Braca]."

The plaintiff maintains that the court's adverse finding was clearly erroneous for three reasons. First, he argues that the court improperly required him to present expert testimony by a forensic accountant to prove his claim of unjust enrichment. Second, he maintains that undisputed evidence of record clearly established the merits of his claim. Third, he contends that, in light of the egregious harm that he suffered as a result of the defendant's fraudulent misconduct, which led to the loss of his equity in the project, the court improperly required him to prove directly that the funds he invested in the project had been diverted to Patricia Braca. We are not persuaded.

The plaintiff's first contention warrants little discussion because it distorts the court's holding. Although the court opined that expert evidence would have strengthened the plaintiff's argument, it went on to state that "the absence of such evidence *was not necessarily fatal*" to the plaintiff's case. (Emphasis added.) The plaintiff's pursuit of this argument can only cast doubt on the strength of his appeal.

The plaintiff's second contention is that the court's finding is inconsistent with undisputed evidence of record. In particular, the plaintiff takes issue with the court's finding that a Westport, LLC, bank account from which Patricia Braca received payments of $33,200 between August 26 and December 30, 2003, was financed by the construction mortgage as well as by the plaintiff's investment. According to the plaintiff, one of his exhibits at trial demonstrates that proceeds from the mortgage were not deposited in the Westport, LLC, account until December 30, 2003. Significantly, the plaintiff did not call this apparent discrepancy to the attention of the trial court, either in a motion to reargue or in a motion for articulation. See Practice Book §§ 61-10 (appellant must provide adequate record for review)

and 66-5 (discussing motion for rectification or articulation of trial court decision).

The possibility that the court misstated a subsidiary fact does not, however, establish that the court's ultimate finding was clearly erroneous. Patricia Braca reminds us that the court expressly found that, after the closing on the earlier project at Woody Lane, the Westport, LLC, bank account had a balance of $33,824.20. That amount might have covered her withdrawals. Furthermore, the court also cited, with apparent approval, Patricia Braca's testimony that in August, 2003, she had access to $75,000 from the proceeds of the sale of her mother's house. She represented that she had contributed these funds to Westport, LLC.

It was the plaintiff's burden to establish that Patricia Braca had been unjustly enriched. To the extent that the court's findings were inconsistent, it was the plaintiff's responsibility to seek an articulation from the court. We cannot find facts. *Weil* v. *Miller*, 185 Conn. 495, 502, 441 A.2d 142 (1981). "In the absence of a motion for articulation, we read an ambiguous trial record to support, rather than to undermine, the judgment." *St. John Urban Development Corp.* v. *Chisholm*, 111 Conn. App. 649, 653, 960 A.2d 1080 (2008). The plaintiff has therefore failed to establish that the trial court's finding that he had not proven Patricia Braca's unjust enrichment was clearly erroneous.

The plaintiff's remaining contention is that "it was not necessary for [him] to forensically trace every dollar wrongfully taken by Patricia Braca, nor should he be required to do so in order to recover against her for the unjustified receipt of his investment and for eroding the equity in the project." In support of this contention, the plaintiff recites evidence, which Patricia Braca does not dispute, that the defendant egregiously misused the plaintiff's investment. In effect, the plaintiff maintains

that the severe losses that he incurred as a result of the defendant's misconduct should excuse him from having to prove that his funds were diverted to Patricia Braca. The plaintiff has, however, cited no authority for the proposition that the law presumes that one spouse has been unjustly enriched by the other spouse's misappropriation of a third person's property. Indeed, enactment of chapter 114 of the Public Acts of 1877, p. 211 (now General Statutes § 46b-36) entitled "An Act in Alteration of the Act concerning Domestic Relations," but commonly called the Married Women's Act, makes such an argument untenable. Pursuant to that statute, a wife is liable "for her debts but not for the debts of the husband . . . ." *Mathewson* v. *Mathewson*, 79 Conn. 23, 33, 63 A. 285 (1906) (reciting history of "the radical change in public policy introduced by the reform Act of 1877").

In sum, we affirm the judgment of the court on the plaintiff's appeal. On the record before us, the plaintiff has not persuaded us that he established that Patricia Braca was unjustly enriched by the funds that he had invested with the defendant. "The trial court's findings of fact are entitled to great deference and will be overturned only upon a showing that they were clearly erroneous." *State* v. *Bletsch*, 281 Conn. 5, 19, 912 A.2d 992 (2007). The plaintiff has not made such a showing in this case.

## II

### THE DEFENDANT'S CROSS APPEAL

The court found that the plaintiff had proven five of his claims against the defendant: breach of contract, breach of fiduciary duty, fraud, intentional misrepresentation and violation of CUTPA.[3] The court awarded him

---

[3] The plaintiff has not appealed from the court's judgment on his claims of breach of the covenant of good faith and fair dealing and statutory theft.

compensatory damages of $500,000 as well as punitive damages and attorney's fees of $140,000. In each of the four counts of his pro se cross appeal, the defendant contests the validity of the factual findings of the court in support of each of its conclusions and asks that we adopt the facts as he has portrayed them and "not as how they were decided" by the court.[4] This we decline to do.

We note at the outset that the court expressly ruled on the defendant's credibility with respect to the findings he disputes on cross appeal: "[The defendant] was the first witness called by the plaintiff and was on the [witness] stand for multiple days. Consequently, the court had an opportunity to judge over a significant period of time [the defendant's] credibility based upon his demeanor, physical manifestations, responses to questions and memory. Based on this opportunity, the court concludes that [the defendant] was not credible concerning issues material to this action. Moreover, the court concludes . . . that [the defendant] intentionally and consistently misrepresented material facts throughout the course of his testimony. Therefore, the court wholly rejects his testimony on the facts material to its decision in this case with the exception of the basic material facts that are largely undisputed."

The court's assessment that the defendant was not credible was particularly significant for its findings in this case because, as the court observed, the financial statements and other documentary evidence that the defendant presented at trial were riddled with unexplained omissions: "Inexplicably, or perhaps tellingly, [the defendant], an experienced builder, never had Fairfield, LLC, sign a general contractor's agreement with

---

[4] Because the plaintiff, although represented at trial, appeared pro se on appeal, we "exhibit some degree of leniency" in reading his appellate brief. *Hartford National Bank & Trust Co.* v. *DiFazio*, 177 Conn. 34, 39 n.2, 411 A.2d 8 (1979).

Westport, LLC, containing terms such as the base contract price, change orders, retainage and payment terms. Further, [the defendant] never required any laborers, vendors or material suppliers to provide any invoices, tickets or mechanic's lien waivers in order to be paid for their work on, or supplies provided to, the [Moss Ledge] project." The court's finding of the defendant's lack of credibility informs, with particular force, our review of all of his claims on cross appeal because each raises questions of fact that were peculiarly within the authority of the trial court to decide— an authority to which we must defer. See *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985).

## A

In the first count of his cross appeal, the defendant does not dispute the existence or terms of the investment contract. Rather, he challenges the validity of the court's finding that he breached that contract because (1) he was not a party to the contract, (2) he was not a member of the defendant Fairfield, LLC, which was a party to the contract, and (3) the contract remains open because it provided that no payment was due the plaintiff until the Moss Ledge property was sold. We are not persuaded.

As a preliminary matter, we note that "[w]hether there was a breach of contract is ordinarily a question of fact. . . . We review the court's findings of fact under the clearly erroneous standard." (Internal quotation marks omitted.) *Seligson* v. *Brower*, 109 Conn. App. 749, 753, 952 A.2d 1274 (2008). "A court's disregard of an entity's structure is commonly known as 'piercing the corporate veil.' " *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 148 n.10, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002). Whether the corporate veil should be pierced also presents a question of fact, which we review under the

clearly erroneous standard. *Connecticut Light & Power Co.* v. *Westview Carlton Group, LLC*, 108 Conn. App. 633, 640, 950 A.2d 522 (2008).

The court found that the defendant used Fairfield, LLC, Westport, LLC, and the Trust, LLC, as his alter egos to collect and divert funds for his business and personal purposes. For example, he took funds invested by the plaintiff in Fairfield, LLC, and transferred them to Westport, LLC, "to pay debts arising from [the defendant's] prior project, Woody Lane, and to pay personal expenses." This violated paragraph fifteen of the contract restricting the use of the plaintiff's funds to Moss Ledge. He wholly dominated the finances, policies and business practices of these entities and "wrongfully, fraudulently, dishonestly and unjustly use[d] the funds in violation of [the plaintiff's] legal rights under the agreement." Notably, he used his control of Fairfield, LLC, to saddle Moss Ledge with a blanket third mortgage of $900,000, the proceeds of which he used solely to finance a new residence for himself and Patricia Braca. Because this third mortgage wrongfully siphoned off the remaining equity in Moss Ledge, the court found credible the plaintiff's claim that he would lose his entire investment even if the property were sold for the full asking price. Consequently, the defendant also violated paragraph fourteen of the contract guaranteeing the plaintiff that his investment would be repaid.

"In the usual veil piercing case, a court is asked to disregard a corporate entity so as to make available the personal assets of its owners to satisfy a liability of the entity." *Litchfield Asset Management Corp.* v. *Howell*, supra, 70 Conn. App. 149. "[I]n Connecticut a court will disregard the corporate structure and pierce the corporate veil only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an

intermediary to perpetuate fraud or promote injustice." (Internal quotation marks omitted.) *SFA Folio Collections, Inc.* v. *Bannon,* supra, 217 Conn. 230. A court may properly disregard a corporate entity that satisfied the elements of either the "instrumentality rule" or the "identity rule." *Litchfield Asset Management Corp.* v. *Howell,* supra, 148 n.11.

"Under the instrumentality rule, a shareholder, director, or officer of a corporate entity can be held personally liable for corporate actions that, in economic reality, are those of the individual. . . . We have consistently held that the instrumentality rule requires proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of." (Citation omitted; internal quotation marks omitted.) *Season-All Industries, Inc.* v. *R. J. Grosso, Inc.,* supra, 213 Conn. 490.

We are persuaded that the record amply supports the court's findings that (1) the defendant's wrongful diversions of funds from Moss Ledge and Fairfield, LLC, to further his personal purposes violated the investment contract, (2) this breach of contract proximately caused a loss of the plaintiff's investment even though Moss Ledge has not been sold and (3) the defendant may be held personally liable to the plaintiff for damages under

the instrumentality rule for "piercing the corporate veil."[5]

## B

The defendant does not dispute that he owed a fiduciary duty to the plaintiff. He so testified, and the court so held, as a matter of law. His second claim on cross appeal is that the court improperly found, as a matter of fact, that he had breached that duty because he (1) could account for all funds expended on Moss Ledge, (2) put his personal funds into Moss Ledge and (3) declined to pay himself $132,000 that he was owed under the contract for work on Moss Ledge. We are not persuaded.

Our task in reviewing a finding of breach of fiduciary duty is to determine whether the court's finding that the defendant had not "proved fair dealing by clear and convincing evidence"; *Spector* v. *Konover*, 57 Conn. App. 121, 127, 747 A.2d 39, cert. denied, 254 Conn. 913, 759 A.2d 507 (2000); was clearly erroneous. We address the defendant's claim mindful of this standard.

As the court observed, many of the facts of record that proved the defendant's breach of contract also proved that he breached his fiduciary duty to the plaintiff: his diversion of the plaintiff's investment in Fairfield, LLC, to pay his debts from a previous project and his personal expenses; his encumbrance of Moss Ledge with a third mortgage that depleted that property of all equity solely to benefit himself and Patricia Braca; and his failure to make payment on the Moss Ledge mortgages that resulted in foreclosures and rendered Fairfield, LLC, unable to fulfill its contractual obligations to the plaintiff. In addition, the court cited the defendant's

---

[5] Having determined that the court properly held the defendant liable under the instrumentality rule, we need not address the court's alternate finding under the identity rule. See *Litchfield Asset Management Corp.* v. *Howell*, supra, 70 Conn. App. 148 n.11.

hiring of his relatively inexperienced son as the Realtor for the project. The court found that this conduct by the defendant was "patently unfair, intentionally dishonest and involved a pattern of self-dealing and conflicts" toward the plaintiff.

The law on the obligations of a fiduciary is well settled. "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him. . . . Once a fiduciary relationship is found to exist, the burden of proving fair dealing properly shifts to the fiduciary. . . . Furthermore, the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof . . . by clear and convincing evidence . . . ." (Citations omitted; internal quotation marks omitted.) *Dunham* v. *Dunham*, 204 Conn. 303, 322–23, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996).

We are persuaded that the extensive trial record of the defendant's self-dealing and conflicts of interest supports the court's finding that the defendant had not met his burden of showing that he had dealt fairly with the plaintiff. Accordingly, the court properly found that the defendant breached his fiduciary duty to the plaintiff.

C

The defendant's third claim is that the court improperly found that he fraudulently and intentionally misrepresented a $520,000 profit on the Woody Lane project to induce the plaintiff to invest in Moss Ledge because

"there is no basis for this claim or decision . . . ." He maintains that the court ignored the chronology of the alleged misrepresentations to the plaintiff and improperly found the testimony of other witnesses, notably his former accountants, to be more credible than his own.

Our review of this claim is governed by the well established principle that "[i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *DiVito* v. *DiVito*, 77 Conn. App. 124, 138, 822 A.2d 294, cert, denied, 264 Conn. 921, 828 A.2d 617 (2003). Simply put, "[i]t is not for this court to pass on the credibility of a witness." *State* v. *Ouellette*, 110 Conn. App. 401, 417, 955 A.2d 582, cert. granted on other grounds, 289 Conn. 951, 961 A.2d 417 (2008).

The court found that "Kyle Lucke was the lead accountant for the Woody Lane project and reported on the file to [Norm] Grill. Lucke testified, contrary to [the defendant], that he never discussed any profit figures with [the defendant] during the summer of 2003, and, he would not have, under any circumstances, given [the defendant] a verbal profit estimate relating to Woody Lane. The court credits the testimonies of Grill and Lucke in this regard, and discredits [the defendant's] testimony and evidence on this issue. The court finds the profit figure provided by [the defendant] to [the plaintiff] to be one created by him without any reasonable basis in fact. [The defendant] purposely provided [the plaintiff] with that baseless figure to entice him into investing in the development of the Moss Ledge property."

The defendant attempts to dispute these findings by attacking the credibility of his former accountants,

whose testimony did not corroborate his allegation that they, and not he, were responsible for the false $520,000 profit figure on Woody Lane. Because this court does not pass on the credibility of witnesses, we cannot say that the court improperly found that the defendant had committed fraud and intentional misrepresentation.

## D

Finally, the defendant claims that the court improperly found that he had violated CUTPA because (1) the court "ignored the terms" of the investment contract, (2) he had "done nothing outside the limits" of the contract, (3) he was not a party to that agreement, which was contracted solely between the plaintiff and Fairfield, LLC, a company which the defendant does not own, and (4) the plaintiff violated the contract. We are not persuaded.

"Whether a practice is unfair and thus violates CUTPA is an issue of fact. . . . The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court." (Internal quotation marks omitted.) *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 434, 849 A.2d 382 (2004).

After citing its extended discussion of the defendant's acts of deception and malfeasance in parts II and III C of its memorandum of decision, the court found that "[t]he totality of the evidence manifests that [the defendant's] conduct as a real estate developer and contractor in dealing with [the plaintiff] concerning the project was unfair and deceptive within the purview of [CUTPA]. As discussed, [the defendant] made a material intentional misrepresentation of fact to [the plaintiff] concerning his financial success on his Woody Lane project to induce [the plaintiff] to invest a large sum of money with him in the Moss Ledge project. [The defendant] viewed [the plaintiff's] funds as part of the

cash flow of the project to be used at his sole discretion to pay expenses relating to the project, to Woody Lane and to himself personally. The unethical and unscrupulous nature of his dealings with [the plaintiff] is demonstrated by the fact that [the defendant] never discussed his wrongful use of the funds with [the plaintiff]. His actions have caused [the plaintiff] substantial injury."

Our jurisprudence regarding CUTPA is well settled. It "applies only to acts in the conduct of any trade or commerce."[6] (Internal quotation marks omitted.) *Stearns & Wheeler, LLC* v. *Kowalsky Bros., Inc.*, 289 Conn. 1, 11 n.13, 955 A.2d 538 (2008); see also General Statutes § 42-110b (a). Its purpose "is to protect the public from unfair practices in the conduct of any trade or commerce . . . ." *Eder Bros., Inc.* v. *Wine Merchants of Connecticut, Inc.*, 275 Conn. 363, 380, 880 A.2d 138 (2005). "[A] violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Internal quotation marks omitted.) *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 82–83, 873 A.2d 929 (2005).

"A court may exercise its discretion to award punitive damages to a party who has suffered any ascertainable loss pursuant to CUTPA . . . . In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights . . . . Accordingly, when the trial court finds that the defendant has acted recklessly, [a]warding punitive damages and attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or

---

[6] The defendant does not dispute that he was engaged in trade or commerce with the plaintiff.

injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 485–86, 871 A.2d 981 (2005).

The court's careful consideration of the evidence at trial and its numerous findings that the defendant's "unethical and unscrupulous" and "unfair and deceptive acts and practices" caused an ascertainable loss to the plaintiff support its conclusion that the defendant not only violated CUTPA, but did so in a manner that merited awarding punitive damages and attorney's fees to the plaintiff. Accordingly, the court did nothing improper in so holding.

### III

### AC 30224

Prior to commencing an action against them, the plaintiff filed an application for a prejudgment remedy against property owned by the defendant, by three of his business entities and by Patricia Braca. On August 10, 2006, the plaintiff obtained one attachment on the Grays Farm property owned by the defendant through Westport, LLC. On May 7, 2007, the plaintiff secured a second attachment of properties owned by the defendant in his own name, properties the defendant owned through Westport, LLC, Fairfield, LLC, the Trust, LLC, and real property in Easton owned by Patricia Braca. In two posttrial motions, the defendant (through Westport, LLC) and Patricia Braca each moved unsuccessfully to discharge these attachments. In AC 30224, they ask that we reverse the two judgments of the court denying the discharge. As a corollary to our decision in AC 29923 affirming the judgment, we set aside the judgment denying the discharge of the prejudgment attachment of the property of Patricia Braca and affirm the judgment denying the discharge of the prejudgment attachment

of the property of the defendant and of his alter ego business entities.

In AC 29923, the judgment is affirmed. In AC 30224, the judgment of the trial court denying the discharge of the prejudgment attachment of the property of John Braca is affirmed. Also in AC 30224, the judgment denying the discharge of the prejudgment attachment of the property of Patricia Braca is reversed, and the case is remanded to the trial court with instruction to discharge the attachment.

In this opinion the other judges concurred.