## JOHN A. BRACA, JR. *v.* ROBERT UTZLER*

Superior Court, Judicial District of Fairfield
File No. CV-11-5029410-S

Memorandum filed June 30, 2011

*Proceedings*

*John A. Braca, Jr.,* pro se, the plaintiff.

*Robert Utzler,* pro se, the defendant.

DOOLEY, J.

### PRELIMINARY STATEMENT

This action alleging various intentional torts arises out of a failed investment by the defendant, Robert Utzler ("Utzler"), in the plaintiff's real estate development/construction business. Previously, Utzler sued the plaintiff, John A. Braca, Jr. ("Braca"), and a judgment was rendered in Utzler's favor in that action. Braca appealed that decision but the judgment was affirmed

---

* Affirmed. *Braca* v. *Utzler,* 134 Conn. App. 460, 38 A.3d 1249 (2012).

by the Appellate Court. Thereafter, Braca commenced this action against Utzler alleging, *inter alia*, fraud, civil RICO [Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.], extortion, CUTPA [Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.] violations and vexatious litigation/abuse of process.[1] Utzler filed a motion for summary judgment as to the remaining counts on the grounds that four of the remaining counts are barred by the applicable statute of limitations as well as the doctrine of *res judicata*. He further seeks summary judgment on the vexatious litigation/abuse of process claim on the basis that he prevailed in the underlying litigation which is alleged to be vexatious and an abuse of process, and, therefore, cannot, as a matter of law, be liable for vexatious litigation or abuse of process. The plaintiff filed an objection to the motion for summary judgment.

For the reasons set forth below, the motion is GRANTED.

## STANDARD OF REVIEW

A party seeking summary judgment has the very heavy burden of demonstrating the absence of any genuine issue of material facts, which, under applicable principles of law, entitle him to judgment as a matter of law. Practice Book § 17-44; *Appleton* v. *Board of Education*, 254 Conn. 205, 209, 757 A.2d 1059 (2000). Conversely, the party opposing such a motion must provide an evidentiary foundation to show the existence of a genuine issue of material fact. Id. This evidentiary foundation must be demonstrated with counteraffidavits and concrete evidence. *Pion* v. *Southern New England Telephone Co.*, 44 Conn. App. 657, 663, 691 A.2d 1107

---

[1] The complaint originally included a money laundering count and a cause of action alleging unfair debt collection practices. Those counts, three and six, were dismissed by the court (*Levin, J.*). Although Utzler includes these counts in his arguments, they will not be addressed herein.

(1997). A party's conclusory statements may not be sufficient to establish the existence of a disputed material fact, even if in affidavit form. *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 583, 687 A.2d 111 (1996).

Supporting and opposing affidavits must be made on personal knowledge and must set forth such facts as would be admissible in evidence. Practice Book § 17-46.[2] Indeed, only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. *Great Country Bank* v. *Pastore*, 241 Conn. 423, 436, 696 A.2d 1254 (1997).

"The function of the trial court is to determine . . . whether an issue of fact exists but not to try that issue if it does exist." *Michaud* v. *Gurney*, 168 Conn. 431, 433, 362 A.2d 857 (1975).

## PROCEDURAL HISTORY

By writ of summons and complaint, Utzler commenced an action against Braca in May, 2006, alleging, *inter alia,* that his business investment with Braca was the result of fraudulent inducement; that Braca breached his fiduciary duty to Utzler; and that Braca violated CUTPA and made intentional misrepresentations to Utzler in connection with Utzler's investment. *Utzler* v. *Braca*, Superior Court, judicial district of Fairfield, Docket No. CV-06-5003257. The case was tried to the court over many days, and judgment entered in favor of Utzler. Damages were assessed in the amount of $500,000 (compensatory), and the court awarded punitive damages and attorney's fees in the amount of

[2] In this regard, Braca's opposition is replete with accusations of criminal activity and various wrongdoing not only by Utzler, but by his former attorney, who is not a party to the litigation. He peppers his arguments with pejorative name-calling and invective. His opposition is a running monologue of the "facts" according to Braca. While it references anticipated trial testimony, the allegations are wholly unsworn or unsupported by other evidence.

$140,000. Braca appealed the decision to the Appellate Court, which affirmed in part the decision and judgment of the trial court. *Utzler* v. *Braca*, 115 Conn. App. 261, 972 A.2d 743 (2009).[3] Herein, this litigation will be referred to as "the first litigation."

By way of writ of summons and complaint filed January 4, 2011, Braca commenced this action against Utzler. The complaint alleges fraud in connection with the investment of funds by Utzler with Braca; extortionate means used to collect those funds; civil RICO premised on the allegation that the funds were amassed through tax evasion and criminal activity; a CUTPA violation; and vexatious litigation/abuse of process in connection with the first litigation.

## I

### STATUTE OF LIMITATIONS—COUNTS ONE, TWO, FOUR AND FIVE

"Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996). "Summary judgment is appropriate on statute of limitation grounds when the material facts concerning the statute of limitations are not in dispute." Id.; *Burns* v. *Hartford Hospital*, 192 Conn. 451, 452, 472 A.2d 1257 (1984).

Here, the defendant asserts that these actions, with the exception of the vexatious litigation suit, accrued no later than the filing of the complaint by Utzler against Braca in May, 2006. He asserts that all of the allegations in the complaint, though not identified by particular date, necessarily predate the first litigation or culminate with the filing of the complaint in the first litigation.

---

[3] This court takes judicial notice of the file in the matter of *Utzler* v. *Braca*, supra, Superior Court, Docket No. CV-06-5003257, to include the court's memorandum of decision. This court does not repeat the entirety of the court's findings. They are presumed known to all parties.

## A

### Counts One, Two and Five

The statute of limitations for torts (other than acts of negligence) is located at General Statutes § 52-577, which provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Similarly, our CUTPA statute has a three year statute of limitation. General Statutes § 42-110g (f) ("[a]ny action under this section may not be brought more than three years after the occurrence of a violation of this chapter").

"When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed. . . . The three year limitation period of § 52-577 begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Internal quotation marks omitted.) *Farnsworth* v. *O'Doherty*, 85 Conn. App. 145, 149–50, 856 A.2d 518 (2004).

A review of the complaint confirms that the factual allegations in support of these causes of action stem from the defendant's investment of money with the plaintiff, which investment was the subject of the prior litigation. The complaint is difficult to understand, and the allegations, while sweeping in content, are woefully short on specific allegations of wrongdoing or dates for same. However imprecise the allegations are as to particular acts of the defendant, it is clear that the events began with the investment in 2003. (Complaint, Paragraph 1.) Thereafter, the complaint addresses "extortionate" efforts to recoup the investment, apparently referring to the bringing of the first litigation. The RICO and CUTPA claims are similarly premised. Thus, it appears clear that the acts complained of both predated

and thereafter culminated in the filing of the complaint in the first litigation. As such, the last possible date upon which the tortious conduct allegedly occurred would be the filing of the complaint in the first litigation—May, 2006. As such, the statute of limitations expired in May, 2009, well before this action was commenced.

Braca argues that the statute of limitations did not commence until the Appellate Court affirmed the judgment of the trial court in the first litigation on June 23, 2009.[4] He cites no authority for this proposition, and this court has found none. His assertion, unsupported by authority or any analysis or explanation, does not inject a question of fact where none exists. The motion for summary judgment as to counts one, two, and five is granted.[5]

## B

## Count Four—Civil RICO

The statute of limitations for the bringing of a civil RICO claim is four years. *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156, 107 S. Ct. 2759, 97 L. Ed. 2d 121 (1987). As set forth above, the alleged criminal activity (tax evasion, extortion) all occurred prior to or culminated in the filing of the complaint in the first litigation. This case was not commenced within four years thereof. Summary judgment as to count four is granted.

---

[4] This may well be the date upon which the statute of limitations began to run with respect to the vexatious litigation/abuse of process claim. Utzler does not seek summary judgment as to count seven on statute of limitations grounds, however.

[5] To the extent Braca relies upon the conduct of the first litigation (which is not apparent from a plain reading of the complaint), as included within the extortion, RICO and CUTPA counts, that conduct is certainly encompassed within count seven, for which no statute of limitations bar is asserted.

## II

## RES JUDICATA—COUNTS ONE, TWO, FOUR AND FIVE

The defendant also asserts that all remaining counts, with the exception of count seven, which alleges vexatious litigation/abuse of process, are barred by the doctrine of *res judicata*. The claim is that many of these issues were decided in the first litigation. For those that were not explicitly decided in the defendant's favor, he argues, they are barred insofar as they could have been raised in the first litigation but were not.

The doctrine of *res judicata*, also known as claim preclusion, "prevents a litigant from reasserting a claim that has already been decided on the merits. . . . Under claim preclusion analysis, a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . *Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action which were actually made or might have been made.* . . . *Scalzo* v. *Danbury*, 224 Conn. 124, 127–28, 617 A.2d 440 (1992); see *DeLaurentis* v. *New Haven*, 220 Conn. 225, 239, 597 A.2d 807 (1991); *Connecticut Water Co.* v. *Beausoleil*, 204 Conn. 38, 43, 526 A.2d 1329 (1987). The doctrine of res judicata [applies] . . . as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction; *Wade's Dairy, Inc.* v. *Fairfield*, 181 Conn. 556, 559, 436 A.2d 24 (1980); and promotes judicial economy by preventing relitigation of issues or claims previously resolved. *Scalzo* v. *Danbury*, supra, 127; *Carothers* v. *Capozziello*, 215 Conn. 82, 94, 574 A.2d 1268 (1990)." (Emphasis added; internal quotation marks omitted.) *Commissioner of Environmental Protection* v. *Connecticut*

*Building Wrecking Co.*, 227 Conn. 175, 188, 629 A.2d 1116 (1993); *DiPietro* v. *Farmington Sports Arena, LLC*, 123 Conn. App. 583, 590, 2 A.3d 963, cert. granted on other grounds, 299 Conn. 920, 10 A.3d 1053 (2010).

Connecticut has adopted a "transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." (Internal quotation marks omitted.) Id., 590–91, citing *Orselet* v. *DeMatteo*, 206 Conn. 542, 545–46, 539 A.2d 95 (1988).

Under these principles, Utzler's argument is persuasive. The court looks to the allegations in the complaint, the allegations and issues considered in the first litigation and the memorandum of decision resolving those allegations and issues.[6]

The allegations in this complaint arise directly and unquestionably from the circumstances surrounding

---

[6] The trial court issued a sixty-one page "careful and detailed memorandum of decision." *Utzler* v. *Braca*, supra, 115 Conn. App. 264. It is manifest in reading this memorandum that there was no aspect of this business transaction which could not have been adjudicated in the first litigation. Indeed, some of the issues presented here were decided by the court in the first litigation; for example, that Braca fraudulently induced Utzler to make the investment. Such a conclusive finding would preclude a finding by this court, as alleged in count one, that Utzler defrauded Braca by "soliciting" Braca or by concealing certain facts in connection with that solicitation.

Utzler's investment with Braca. Count one, paragraph one, states: "The defendant Robert Utzler in January 2003 solicited John A. Braca Jr. at his residence located at 7 Crossbow Lane, Easton CT by telephone wanting to invest money in the Plaintiff's construction business. Subsequently, in August 2003 the defendant did make an investment." Each and every allegation thereafter references back to that investment: the source of the funds (tax evasion) being concealed from Braca, Utzler's extortionate attempts to profit from that investment; the implications of this conduct in the context of the RICO and CUTPA statutes. These allegations are, in essence, defenses to the first litigation or counterclaims which could have been brought in the first litigation.[7] This type of serial litigation is precisely what the doctrine of *res judicata* is designed to prevent. All of the circumstances under which Utzler made the investment and thereafter sought its return were, could have, or should have been decided in the first litigation.

With respect to the res judicata argument, Braca, again without authority or analysis, merely asserts that the first litigation "has nothing to do with this lawsuit." He blithely dismisses the court's decision while acknowledging that many of the issues presented here were presented to the court in the first litigation. For example, he states: "Regardless of any prior findings, [Braca] received a telephone call from [Utzler]," thus,

---

[7] Braca relies upon the prohibition against essentially leveraging criminal prosecution in an effort to advance a position in a civil matter to excuse his failure to raise these issues in the first litigation. Again, his opposition contains only this conclusory statement. He provides no authority or analysis to support the claim that these issues could not be raised in the first litigation. He also asserts, without citation, that Judge Hiller "arbitrarily" and "out of the blue" determined that he could not bring special defenses in the first litigation. This rhetoric is simply inadequate to create an issue of fact or defeat the *res judicata* bar. Indeed, in the memorandum of decision, the court (*Tyma, J.*) noted that the preclusion of special defenses was the result of dilatory litigation tactics by Braca.

essentially, asking this court to relitigate matters already decided. And although he asserts no connection whatsoever between the first litigation and this case, he argues that the statute of limitations for this case did not begin to run until the Appellate Court affirmed the trial court in the first litigation. While he is wrong as to the legal argument, the argument itself makes manifest the overlapping and interwoven nature of the claims.

The motion for summary judgment as to counts one, two, four and five is granted on this alternative ground as well.

### III

### VEXATIOUS LITIGATION/ABUSE OF PROCESS—COUNT SEVEN

At count seven, Braca alleges that the first litigation was vexatious and an abuse of process.[8] He alleges that the suit was without merit (Complaint, paragraph 16) and that the "liens" obtained in connection with the first litigation were an abuse of process (Complaint, paragraph 17).[9]

As to the vexatious litigation claim, Utzler argues that the plaintiff cannot prevail, as a matter of law, insofar as he prevailed in the first litigation. He is correct.

"A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint. To establish either cause of action, it is necessary to prove want of probable cause, malice and a termination of suit in

---

[8] As with the other counts of the complaint, the allegations are inartfully pled and difficult to assess. Braca is self-represented, so the pleading is construed with broad latitude.

[9] He appears to reference the prejudgment remedy attachment ordered by the court (*Hiller, J.*).

the plaintiff's favor. *Calvo* v. *Bartolotta*, 112 Conn. 396, 397, 152 A. 311 [1930]; *Schaefer* v. *O. K. Tool Co.*, 110 Conn. 528, 148 A. 330 [1930]." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 94–95, 912 A.2d 1019 (2007). The requirement of "favorable termination" is not strictly a requirement in Connecticut. Where the concerns implicated by such a requirement are not present, Connecticut courts view the outcome of the prior litigation in the context of the lack of probable cause requirement.[10] *DeLaurentis* v. *New Haven*, supra, 220 Conn. 251. That the first case, having been tried on the merits, resulted in a judgment against Braca is extraordinary evidence, indeed conclusive evidence, that Utzler acted with probable cause. *Frisbie* v. *Morris*, 75 Conn. 637, 640, 55 A. 9 (1903) (in an action for vexatious suit, where judgment was properly rendered against the defendant in the prior action, this is, "as a general rule, conclusive evidence of the existence of probable cause for instituting the . . . suit"); see also *DeLaurentis* v. *New Haven*, supra, 225; *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 296 Conn. 315, 330–31, 994 A.2d 153 (2010).

Count seven also purports to allege an abuse of process claim, based apparently on the first litigation and

[10] One concern which does give rise to the "favorable termination" requirement is that defendants would use a vexatious suit "as a means of making a collateral attack on the judgment against them . . . ." *DeLaurentis* v. *New Haven*, supra, 220 Conn. 251. In this court's view, that concern is squarely implicated in this case. At paragraph 15 of the complaint, Braca asserts: "The [first litigation] is vexatious and an abuse of process. The [p]laintiff shall show the court that the basis in which the defendant, Robert Utzler, accumulated these funds and attempted to profit from these illegal activities *should vacate the existing judgment in* [*the first litigation*] *and vacate the court's findings*." (Emphasis added.) It is unclear under our appellate precedents whether, under these circumstances, the "favorable termination" requirement would defeat this claim. *DeLaurentis* v. *New Haven*, supra, 252; see also *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 296 Conn. 315, 330–31, 994 A.2d 153 (2010) (Supreme Court reversed trial court's invocation of the "favorable termination" requirement for policy reasons).

the liens obtained and placed on Braca's residence.[11] "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process is the use of a legal process . . . against another *primarily* to accomplish a purpose for which it is not designed . . . ." (Citations omitted; emphasis in original.) *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987). "Comment [b] to § 682 explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. . . . [Id.]" (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 301 Conn. 194, 213, 21 A.3d 709 (2011). "When deciding whether the employment of a legal process constituted abuse of that process, we have examined the purpose served by the particular process at issue in the case." Id., citing, e.g., *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 773, 802 A.2d 44 (2002). Here, the purpose of the first litigation was to gain redress for Braca's breach of fiduciary duty; CUTPA violation; and intentional misrepresentations and fraud. That precise purpose was accomplished when a judgment entered in favor of Utzler. While this complaint avers that the first litigation was improperly

[11] Although he alleges that the obtaining of the liens was an abuse of process, the allegations do not specify at all the improper purpose occasioned by seeking the prejudgment remedy. Therefore, this court addresses only the allegations that the bringing of the first litigation was an abuse of process.

motivated by an effort to collect illegal profits, the judgment in favor of Utzler in the first litigation would preclude any finding that the case was brought for purposes other than those that are contemplated. *Ventres* v. *Goodspeed Airport, LLC,* supra, 214 (evidence of ulterior motive did not defeat summary judgment on an abuse of process claim where process accomplished its intended purpose).

The motion for summary judgment as to count seven is granted.

For all of the foregoing reasons, the motion for summary judgment as to all remaining counts shall enter in favor of the defendant.

SO ORDERED.